. SULLINS *v*. STATE.

Opinion delivered May 28, 1906.

1. GRAND JURY—CHALLENGE.—It is not a ground of challenge of a member of the grand jury, in favor of one confined in jail on a charge of murder, that such member served on the coroner's jury which investigated the killing of deceased, or that his name was indorsed on the indictment as a witness for the State, unless he has been "summoned or bound in a recognizance" as a witness for the State, as required by Kirby's Digest, § 2220. (Page 130.)   ·

2. INDICTMENT—COMPETENCY OF GRAND JURY—CHALLENGE.—An indictment will not be quashed because the defendant was confined in jail when the grand jury was impaneled, and was given no opportunity to object to the competency of any member thereof, if he fails to show wherein the lack of such opportunity worked to his prejudice. (Page 130.)

3. JUROR—DISQUALIFICATION BY OPINION.—A juror is not disqualified because he entertains an opinion, based on rumor or from reading newspapers, which it would take evidence to remove, if, notwithstanding such opinion, he is able to try the case on the evidence only. (Page 131.)

4. SAME.—While great weight is attached to the finding of the trial judge that a juror is competent, it was error to find that a juror in a murder case was not disqualified who stated that he had formed an opinion from reading a report of the homicide in a newspaper written by his brother-in-law, who was a witness for the State, and in whom he had confidence, and that it would take evidence to remove such opinion. (Page 133.)

5. SAME—OVERRULING OF CHALLENGE—PREJUDICE.—Where a challenge to a particular juror was improperly overruled, and defendant was compelled to exhaust his peremptory challenges before the panel was completed, there arises a *prima facie* presumption of prejudice which may be removed by showing that under the undisputed facts the verdict could not have been different from what it was. (Page 133.)

6. APPEAL—PREJUDICIAL ERROR—REDUCTION OF PUNISHMENT.—Where the only possible prejudice caused by an error of the court can be removed on appeal by reducing the punishment from murder in the second degree to manslaughter, an order to that effect, with the assent of the Attorney General, will be entered. (Page 135.)

Appeal from Pope Circuit Court; *William L. Moose,* Judge; affirmed.

### STATEMENT OF FACTS.

In September, 1905, Jesse Sullins killed Sam Ratcliff in Pope

County, Arkansas, by stabbing him with a knife. Sullins was indicted for murder in the first degree. In selecting the jury to try the case M. P. Hanks was called for examination concerning his qualifications to serve on the jury, and gave answers to questions propounded to him as follows:

"Q. Have you formed an opinion as to the guilt or innocence of the defendant?"

"A. I suppose I have."

"Q. That is not such an opinion as would prevent you from going into the jury box and rendering a verdict by what the testimony shows?"

"A. No, I think not."

"Q. You would be governed by the law and the testimony, would you not?"

"A. Yes, I think so."

"Q. You have not talked with any of the witnesses about it, have you?"

"A. No, sir; I don't think so. All I saw was in the paper and what came from rumor. I am a brother-in-law of Will Turner, a State's witness, and Mr. Turner is a man I have confidence in and rely on his statements, and he wrote the statement of the killing in the *Chronicle*. Mr. Turner is my brother-in-law, and is the editor of the *Atkins Chronicle*, and the statement in that paper created an impression in my mind, and I have that opinion now, and it would take testimony to remove it."

The defendant exhausted all his challenges before the jury was complete. The other facts are sufficiently stated in the opinion.

The defendant was convicted of murder in the second degree, and sentenced to 21 years in the State penitentiary. His motion for new trial being overruled, he appealed.

*Brooks & Hays,* for appellant.

1. Appellant, being confined in the county jail, was entitled to be present when the grand jury was impaneled and before they were sworn. Kirby's Digest, § 2220. The record must affirmatively show the presence of the defendant at every substantial step. 24 Ark. 620; 44 Ark. 331; 69 Ark. 189.

2. It is error to hold as qualified jurors who on their *voir*

*dire* state that they have formed an opinion, even though they state that they can give the defendant a fair and impartial trial. 45 Ark. 165; 56 Ark. 402. The modification of this rule in 69 Ark. 322 is but slight, and, when applied to the facts in this case, the defendant is entitled to a new trial. See 69 S. W. 774. After eleven jurors had been accepted, and defendant had exhausted nineteen of his challenges, when the court of his own motion excused a juror, it was error to deny appellant another challenge for the juror excused. 1 Thomp. on Trials, § 90.

3. When in his opening statement the prosecuting attorney, speaking of the defendant, said: "The defendant, with blood in his eye and murder in his heart, took the life of a fellow citizen, and the defendant is now interposing an *imaginary defense*," the defendant objected, but the court refused to reprimand counsel. Such language necessarily prejudiced the jury against the defendant and any defense he might interpose. 65 Ark. 389; 65 Ark. 475; 67 Ark. 365; 66 Ark. 16; 60 S. W. 557.

4. No sufficient showing was made of diligence to procure the attendance of the witness Warner. Neither was it shown that the witness was dead or out of the jurisdiction of the court. It was error to permit his statement to be read. Art. 2, sec. 10, Const.; 47 Ark. 180; 38 Ark. 304; 40 Ark. 454; 29 Ark. 17.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

1. Each juror answered that, although he had an opinion as to defendant's guilt or innocence, he would be governed by the law and evidence, except one, to whom the question was not propounded. If defendant desired to have him excused for cause, he should have asked the question himself. He can not complain now, if he preferred to challenge the juror peremptorily. 40 Ark. 515; 20 Ark. 36; 59. Ark. 132. Jurors are competent, notwithstanding they may have formed opinions from rumors or newspaper reports, if they say on *voir dire* that they can give the defendant a fair trial, based on the law and the evidence. 40 Ark. 451; 47 Ark. 180.

2. There was no error in overruling the motion to quash the indictment. 73 Ark. 399. Having expressed an opinion that the defendant is guilty does not disqualify one from serv-

79—9

ing on the grand jury.   Clark's Crim. Proc. 120; 157 Mass. 516.

3.   Warner's statement was properly admitted. It was shown that he had disappeared, and his whereabouts were unknown, and also that the statement was taken down, read to, and signed by the witness in the presence of defendant and his attorneys.   33 Ark. 540; 40 Ark. 461; 47 Ark. 185.

4.   The prosecuting attorney's argument could not have prejudiced the jury, since they returned a verdict for murder in the second degree, whereas there was evidence to support a verdict for the higher crime.   71 Ark. 406.

RIDDICK, J., (after stating the facts.)   This is an appeal from a judgment of murder in the second degree, sentencing the defendant to 21 years confinement in the State penitentiary.

The first question presented was raised by the motion to quash the indictment, which was overruled by the circuit court. The motion set up that defendant was confined in the jail while the grand jury which found the indictment was being impaneled, and that he was given no opportunity to object to the competency of any member thereof.   He further alleged that W. F. Turner, the foreman of the grand jury, had previously served on the coroner's jury to investigate the cause of the death of Sam Ratcliff, and that the coroner's jury had returned a verdict holding the defendant for the murder of Ratcliff; that Turner's name was indorsed on the indictment as a witness for the State, and that for the reasons stated he was not competent to serve on the grand jury, and that defendant would have challenged him had opportunity been given to do so.   The statute of this State says that every person held to answer a criminal charge may object to the competency of any one summoned to serve as a grand juror on the ground that "he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been summoned or bound in a recognizance as such; and, if such objection be established, the person so challenged shall be set aside."   Kirby's Digest, § 2220.   Now, the defendant does not claim that Turner was the prosecutor or complainant against him.   His challenge is based on the fact that Turner had served on the coroner's jury which investigated the killing of Ratcliff, and on the further fact

that his name was indorsed on the indictment as a witness for the State. But the fact that he had served on the coroner's jury is not under the statute a ground of challenge to a grand juror, nor is the fact that he was a witness on the part of the State cause for such challenge unless he has been already "summoned or bound in a recognizance" as such witness at the time of such challenge. As it was not shown that Turner had been summoned or entered into recognizance to appear as a witness, it is plain that defendant had, under the statute, no ground of challenge against Turner as a member of the grand jury, and that the failure to give him an opportunity to challenge worked no prejudice to him. The motion to quash was therefore properly overruled.

The next question raised relates to the ruling of the trial judge on questions concerning the conpetency of certain persons to serve as jurors on the trial of the case. A number of the regular jurors and talesmen stated on examination that they had formed opinions concerning the guilt or innocence of defendant that it would take evidence to remove. But on further examination it was shown that the opinions of these jurors were formed from rumor or from reading newspapers only, and were not such as to disqualify them from serving on the jury. We attach little importance to their statements that it would take evidence to remove the opinions held by them; for, if one has an opinion of any kind, it is natural that it should take evidence of some kind to remove it. That would be true of an opinion formed from rumor merely, but our statute expressly provides that such an opinion shall be no ground for challenge. Kirby's Digest, § 2366. "It is a matter of common knowledge that we all form opinions from rumor, and from reading newspapers, which we retain until we hear another version of the matter, or until time, or forgetfulness, or something, has removed them from our minds. If one called for examination as a juror should have an opinion of that kind concerning the case, however slight the importance he attached to it, he yet might truthfully say that, if put on the jury, it would remain on his mind until he heard something to the contrary—in other words, that it would take evidence to remove it. It does not by any means follow that he would, if placed on the jury, be influenced by such opinion, or allow it to take the place

of evidence." *Hardin* v. *State,* 66 Ark. 53. The presumption should be that when one is placed on the jury and hears direct testimony as to the facts of a case, his previous opinion, formed from rumor merely, will be disregarded entirely, and the case tried on the evidence only. If, however, the examination shows that the opinion of the juror is a fixed opinion, and one not likely to yield to the evidence, and of a kind to affect his judgment of the case, he should be discharged, whether his opinion was formed from rumor or not.

In this case the facts brought out on examination were not sufficient to overturn the finding of the circuit judge that these jurors were unbiased and competent to serve on the jury, except as to one of them. The examination of M. P. Hanks convinces us that the opinion held by him was such as to disqualify him from service on the jury. It has been decided by this court that an opinion formed, not from rumor only, but from talking with witnesses who claimed to know the facts disqualifies a juror. *Caldwell* v. *State,* 69 Ark. 322. Now, by reference to the statement of facts, it will be seen that, while Hanks testified that he had not talked with any of the witnesses in the case, he states that his opinion was formed from reading a report of the homicide in a newspaper written by Will Turner, his brother-in-law, who was also a witness for the State. The juror stated that he had confidence in his brother-in-law, and relied on his statement published in the paper, and formed an opinion from reading it, which opinion he still held, and which it would take evidence to remove. It is true that this juror stated that he did not think the opinion entertained by him would prevent him from rendering a verdict in accordance with the evidence, and that he thought he would be governed by the testimony. But, as the juror knew that his brother-in-law was a witness for the State, an opinion formed from reading an article written by him was, in effect, an opinion based on the statement of a witness. Ordinarily, opinions formed from newspaper reports do not disqualify, but when the author of the report is known to the juror as a witness in the case, and is a person in whom he has confidence, then an opinion formed from reading his statement disqualifies, just as an opinion formed from talking with such witness would disqualify. In other words, if an opinion formed from talking with one known

to be a witness disqualifies, then, an opinion formed from reading a written report of the facts of the homicide made by one known to be a witness and in whom the juror has confidence must also disqualify, because in each case the juror knows that the statement on which he bases his opinion is not a mere rumor but a statement of the facts by a witness.

We are aware that great weight should be attached to the finding of the trial judge that a juror is competent, as he has the juror before him, and is therefore better able to judge of his impartiality and freedom from bias than we are. *Hardin* v. *State,* 66 Ark. 53. For that reason we have felt some hesitation in differing with the trial judge as to the competency of this juror, though, after consideration of the question, we are of the opinion that as to him the circuit court erred in refusing to sustain the challenge for cause.

There are other points discussed, but with the exception noticed we find no error in the rulings of the court, and the only other question necessary to determine is whether the refusal of the court to sustain a challenge for cause to a juror requires that the judgment of conviction should be reversed. Now, the record shows that this juror did not sit in the trial of the case, for, on his challenge for cause being overruled, the juror was peremptorily challenged by the defendant. No one shown to have any disqualifying opinion or bias against the defendant was allowed to sit on the case. The only effect of the ruling of the court was to deprive the defendant of one of his 20 peremptory challenges allowed by statute. This error, under our decisions, makes out a *prima facie* case of prejudice. But it was not such a radical disregard of the rights of the defendant as to vitiate the whole trial. For instance, if the trial judge had compelled the defendant to submit to a trial before eleven instead of twelve jurors, then, however clear the guilt of the defendant, it would, in the absence of a plea of guilty on his part, be our duty to reverse the judgment and remand the case for a new trial, even though the defendant had admitted his guilt on the stand, for in that case he would have had no trial by a jury, such as the law recognizes. But in this case, as we have before stated, the defendant challenged the objectionable juror, and had a trial before a duly qualified and impartial jury. Many learned courts hold that in

such case there is no prejudice, and that the error of the court in passing on the qualification of a juror who did not sit on the case is no ground of reversal. *Carthaus* v. *State,* 78 Wis. 560; *O'Neil* v. *Lake Superior Iron Company,* 67 Mich. 560; *Stewart* v. *State,* 13 Ark. 742; 12 Enc. Plead. & Prac. 506-508; 12 Cyc. 866.

It was so held by this court in the case of *Stewart* v. *State,* above cited, but later cases hold that prejudice will be presumed when the defendant exhausts his peremptory challenges before the panel is completed. But we think that, as in the case of other errors, this *prima facie* presumption may be removed by showing that under the undisputed facts the verdict could not have been different from what it was. For instance, if not only the undisputed evidence on the part of the State, but also the testimony of the defendant himself, clearly shows the facts which make out the crime, then we think this court would not be justified in setting the conviction aside for such an error, for under such a state of facts the verdict would have been the same had the case been tried by any other unbiased and impartial jury.

Now, that is the case here, so far as the guilt of the defendant is concerned, for his own testimony shows that the killing of Ratcliff was neither necessary nor excusable on his part. The evidence in the case is very fully stated in the separate opinion of the Chief Justice, and we shall only briefly refer to the facts here.

On the day of the tragedy Ratcliff and one Warner had obtained a jug of whisky through the express company in the town of Atkins. Before leaving the town they opened the jug, and invited the defendant to join them in a drink, and he did so. They took other drinks, and became more or less under the influence of drink. The town marshal then ordered Ratcliff to go home. He and Warner then started for their home in the country, taking with them the jug of whisky. As they left the town, Ratcliff was playing his fiddle and singing, while Warner carried the jug. The defendant probably did not understand the reason for this sudden departure, and on that account, or for some cause, he became offended. He followed them on horseback, and when he overtook them got off his horse, walked up to Ratcliff, and stabbed him several times. The defendant testified that when

he overtook them Ratcliff took his knife from his pocket, and struck him, and that he then struck Ratcliff. He did not say that Ratcliff struck him with a knife, and, as defendant was not cut or hurt in any way, it is evident that he was not cut or hurt by Ratcliff. Ratcliff was cut three times by defendant, and fell to the ground. He asked the defendant to go for a physician, which defendant at once did. But the point of the knife had entered the apex of Ratcliff's heart, and he was soon past all surgery, and dead when the physician arrived. An examination was made, but no weapon was found on or near him except a closed pocket knife in his pocket. According to defendant's own statement, he advanced on Ratcliff when there was no occasion for him to do so. On being asked on the witness stand if he did not kill Ratcliff because Ratcliff insulted his wife, he replied: "Yes, sir; that was the biggest part of the trouble." It is very evident from this testimony of defendant that this is not a case of justifiable homicide, while the other witnesses make out a clear case against him.

The only mitigating circumstance connected with the killing is that these parties were both to some extent under the influence of intoxicants, and it is possible that defendant did not realize the gravity of the assault he was making on Ratcliff. The fact that he immediately went for a physician, and asked him to do what he could for the wounded man, shows that he probably did not intend to kill him. While allowing everything in favor of defendant, there may be some slight evidence to reduce the offense to manslaughter, there is, we think, none to show a justification. It follows therefore that the only possible prejudice that the error of the court could have caused was that another jury might have found defendant guilty of manslaughter, instead of murder. In that view of the case we are of the opinion that the conviction as to murder should for the error named be set aside, but, if the Attorney General prefers, the conviction may be affirmed as to manslaughter, and the cause remanded with an order that the circuit court assess his punishment and give judgment against him for that offense.

BATTLE, and WOOD, JJ., dissented.

HILL, C. J., (concurring.) I concur in the law as stated by Mr. Justice RIDDICK, and think that his opinion demonstrates that

an error was committed in compelling appellant to use a peremptory challenge on a juror who should have been excused by the court as not properly qualified to try the case. But I do not concur in holding that such error is prejudicial, because I think the testimony of the appellant himself proves his guilt of the crime of which he was convicted—murder in the second degree.

The evidence of the State made out a case of murder in the first degree, and to meet it the appellant took the stand and told in substance this story:

That the deceased, Ratcliff, had been visiting his home, and several days before the killing his wife told him that Ratcliff had insulted her, and tried to get her to run away with him. Notwithstanding this information from his wife and its repetition from his son, he was drinking with Ratcliff in Atkins, the town near where they lived, on the day of the tragedy. He left town with Ratcliff and his companion, Warner, who lived together. He was riding, and they were walking, and he carried for them some meat they were taking home. Ratcliff was enlivening the homeward journey with music from his fiddle. When they came to "the double bridges," a point where their roads separated, appellant called to Warner to get his meat, and Warner replied insultingly; and appellant rode on towards them to deliver the meat. Just when he dismounted does not appear. Ratcliff laid down his fiddle, took out his knife and started towards him. He told Ratcliff to let him alone, and continued in this language: "When I got ferninst him, he struck me. When he struck me, I struck him. I was drinking, but remember seeing his knife as he came up to me. I saw Warner coming back to us, apparently trying to open his knife, and I turned and walked back towards my mare." This occurred in the cross-examination: "You killed him, from what I understand from you, for insulting your wife?" "Yes, sir; that was the biggest part of the trouble." It was further developed in the cross-examination that he had been drinking with Ratcliff in town, and that he did not then resent the insult because he "dreaded a racket." He said he was pretty drunk when he killed Ratcliff, but admitted sufficient knowledge of the situation to render a plea of drunkenness futile. This was appellant's version of the affair, and it will be noted that the only variation from the usual "hip pocket story" is that

it was a knife in this instance.    The other testimony showed Ratcliff was stabbed three times, two of which wounds were immediately fatal.    Ratcliff's knife was found unopened in his pants pocket, and the only thing in his hands was the fiddle.

But test appellant by his own evidence alone, for the purpose of this inquiry.    He advanced with open knife on his drunken companions, when one of them shouted an insult to him.    Then, instead of retreating from a fray which he says was imminent, he advances to it.    It is true, he says Ratcliff struck him first, but he does not say he was struck with a knife or other deadly weapon.    He failed to show evidence of the blow, and knives usually leave traces.    In fact, the feeble effort at self-defense is abandoned when he admitted the insult to his wife was "the biggest part of the trouble."    This insult, if in fact the insult was not a *nunc pro tunc* convenience, had not stricken too deeply to prevent his carousing with the giver and accommodating him and his companion; and yet, forsooth, he grows suddenly indignant over it and advances upon and slays the giver of it.    His sensitiveness to the insult came rather late.    In my opinion, these facts, developed from the appellant himself, prove his guilt of murder in the second degree at least, and hence render innocuous the error in impaneling the jury.    As two judges have voted to reverse the case on account of that error, I find by accommodating my opinion to that of the other two who vote to affirm for manslaughter that my views are more nearly met than by reversing the case, and therefore I concur in the judgment.