## STATE v. THORNE.

No. 2351.    Decided June 18, 1912.    Rehearing denied August 16,
1912 (126 Pac. 286).

1. HOMICIDE—INSTRUCTIONS—RECOMMENDATION AS TO PUNISHMENT.
Under Comp. Laws 1907, sec. 4162, providing that one guilty
of murder in the first degree shall suffer death, or, on the
recommendation of the jury, may be imprisoned for life, in
the discretion of the court, the question of recommendation
is for the jury, and they should not be directed or admonished
with regard to what should control or influence them in
reaching a conclusion on the question of recommendation; the
court's authority being merely to follow or disregard any
recommendation. (Page 417.)

2. JURY—CHALLENGE FOR CAUSE—GROUNDS—RELIEF AS TO PUNISH-MENT. It is not ground for challenge for cause by one being tried for murder committed in the perpetration of robbery, that a juror believes murders so committed should be punished by death, without a recommendation for life imprisonment. (Page 417.)

3. CRIMINAL LAW—APPEAL—REVIEW—DISCRETION OF COURT—QUAL-IFICATION OF JUROR. Under Comp. Laws 1907, sec. 4836, pro-viding that one's opinion on the cause, founded on public rumor or newspaper statements, shall not disqualify him as a juror, if it appear to the court on his declaration that he can and will, notwithstanding such opinion, act impartially and fairly, action of the trial court in overruling a challenge for cause on the ground of such an opinion will not be interfered with, unless it is clearly made to appear that it abused its discretion.[1] (Page 421.)

4. JURY—CHALLENGE FOR CAUSE—GROUNDS. Though a juror stated that if a petition, relative to the crime of which defendant was charged, calling on the court to postpone other cases, and try and sentence these red-handed rascals within a week, giving them the full penalty of their heinous crime entitled them to, had been presented to him he "possibly would have signed it," as one of his business associates did, challenge for cause on that account was properly overruled; it clearly appearing from his whole examination that he did not mean that he approved of the sentiments in the petition, but simply that if he had been present when it was presented to his business associates he, without giving the matter any particular attention or con-sideration, might possibly have signed it. (Page 424.)

5. CRIMINAL LAW—APPEAL — HARMLESS ERROR — PRESUMPTION—SELECTION OF JURY. Any error in overruling challenges for cause, thereby requiring the use of peremptory challenges, will not be presumed prejudicial, though the peremptory challenges are exhausted before the last juror is obtained; but to show preju-dice it must be made to appear that an objectionable juror was forced on defendant after his peremptory challenges were exhausted, whom he would have removed but for such exhaus-tion, which is not done where no objection to a juror is there-after made. (Page 425.)

6. CRIMINAL LAW—APPEAL—HARMLESS ERROR—SELECTION OF JURY. Where the evidence is such that no other verdict than one of guilty is legally permissible, any error in rulings on chal-lenges to jurors will not work a reversal. (Page 429.)

---

[1] State v. Haworth, 24 Utah, 407, 68 Pac. 158.

7. CRIMINAL LAW—TRIAL—CONDUCT OF PROSECUTING ATTORNEY—RELATIVES AS WITNESSES. The mere calling of the mother of deceased as a witness is not ground for new trial, as unfair conduct of the prosecuting attorney, though her testimony is found immaterial, and so stricken out. (Page 430.)

8. CRIMINAL LAW — APPEAL — HARMLESS ERROR — ARGUMENT OF COUNSEL. Arguing to the jury the importance of finding defendant guilty of murder in the first degree, without a recommendation of imprisonment, instead of the death penalty, that he might not be pardoned, though improper, having been immediately withdrawn and declared improper by the court, will be considered harmless, in view of the overwhelming and uncontradicted evidence of guilt. (Page 431.)

9. HOMICIDE—TRIAL—INSTRUCTION—DECREE OF CRIME. Defendant, under the undisputed evidence and his own admissions, having been guilty of murder in the first degree, or not guilty at all, his requested charge that the jury might find him guilty of murder in the first degree or in the second degree was properly refused. (Page 432.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Harry Thorne was convicted of murder and he appeals.

AFFIRMED.

*M. E. Wilson, E. A. Walton* and *Bismark Snyder* for appellant.

*A. R. Barnes,* Attorney-General, and *E. V. Higgins* and *Geo. C. Buckle,* Assistant Attorneys-General, for the State.

FRICK, C. J.

This is the second appeal by appellant. Upon the former appeal the judgment of conviction was reversed. Upon the second trial he was again convicted of murder in the first degree by shooting one George W. Fassell, and sentenced to suffer death. The evidence on the second trial (with the exception of the objectionable cross-examination referred to in the former opinion, which was entirely omitted) was practically the same as it was on the first trial. The mate

rial facts are fully stated in the opinion written by Mr. Justice Straup on the first appeal in 39 Utah, 208, 117 Pac. 58, and for that reason we shall not make a statement of facts at this time.

Referring to the assignments of error in the order in which they are presented by appellant's counsel in their brief, the first one to be noticed relates to alleged errors in impaneling the jury, which arose as follows:                    1, 2

Comp. Laws 1907, sec. 4161, defines murder in the first degree as follows:

"Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life—is murder in the first degree."

Section 4162 provides:

"Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court."

On the former appeal section 4162 was under consideration, and we there held that the question of recommendation is one for the jury, and that the court is not authorized to direct or admonish them in its charge with regard to what should control or influence them in reaching the conclusion upon the question of whether they will make a recommendation or not. We are still satisfied with the conclusion there reached upon that subject. The very language of the statute implies that the question of whether a recommendation shall be made or not is alone for the jury to determine. What may influence or induce them in making a recommendation is a matter with which the statute does not concern itself. This is made plain from the

fact that the court is not bound to follow the recommendation of the jury, even though one be made. If the jury, therefore, for an inadequate reason, or for no reason at all, arbitrarily recommend the milder punishment in a case where the facts and circumstances clearly call for the maximum penalty the court then may exercise its discretion and refuse to follow the recommendation. But this is the only power the court has with regard to the recommendation contemplated by section 4162, *supra*.

There are, however, several other provisions of our statute that are deemed material to the determination of appellant's assignment now under consideration. Section 4833, so far as material, provides that it shall be cause for challenge for bias if the "existence of a state of mind on the part of a juror leads to a just inference in reference to the case that he will not act with entire impartiality." Section 4834, among other things, provides that "if the offense charged is punishable with death," and the juror entertains conscientious opinions against the infliction of death, and, further, if the juror has "a belief that the punishment fixed by law is too severe for the offense charged," that this shall be cause for challenge for implied bias.

The transcript of the proceedings relating to the examination of jurors on their *voir dire* covers 770 typewritten legal cap pages. In addition to the numerous questions propounded to jurors with respect to whether each juror was free from either express or implied bias, appellant's counsel also devoted much time and directed numerous questions to each juror to ascertain his state of mind upon the question of making a recommendation, in case appellant should be found guilty as charged in the information. The examination upon that subject is so voluminous and varied that it is not practical to set it forth even in substance. Not only counsel on both sides interrogated the jurors, but the court at times also felt it necessary to do so, in order to get at the juror's true state of mind. Counsel for appellant, however, in a final question to one of the jurors very nearly reflected

their views upon the question under consideration, and for that reason we shall copy that question in full. It is as follows:

"I will ask you, Mr. Dunyan, whether in all cases . . . where it is shown by the evidence that the defendant is guilty of murder perpetrated in an attempted commission of robbery, whether in all such cases you would be decidedly in favor of inflicting the death penalty when the proof was clear, without any consideration of the recommendation?" The juror answered: "Yes, sir." The juror was challenged upon the ground that he would not act with entire impartiality, and "that he would refuse to consider the question of recommendation." The court overruled the challenge.

We remark that we cannot agree with counsel that the juror in question showed a state of mind that in every case of murder in the first degree he would refuse to consider the question of a recommendation. When considering all that the juror said upon the subject, it is clear that in his judgment all murders that are committed in the perpetration of robbery, when the proof of guilt is clear, should be punished by the infliction of the maximum penalty, namely, death. The juror, however, admitted that there may be instances of first-degree murder that might call for a milder punishment; but he was clearly of the opinion that those committed as is stated above, where the proof was clear, did not come within this latter category. Counsel argue that, in view that the statute permits the state to challenge all jurors who entertain conscientious scruples against the infliction of the death penalty, therefore the appellant should also have been permitted to challenge for cause all jurors who were unqualifiedly in favor of inflicting the death penalty as a punishment for murder committed while in the perpetration of robbery. We cannot yield assent to such a proposition. The statute fixes the penalty for first-degree murder as death, unless the court should, in its discretion, follow the recommendation of the jury, if they make one, that the punishment shall be imprisonment for life. A person who has conscientious scruples against enforcing the statute is

therefore clearly not a competent juror. The state excuses
him upon the ground that his conscientious scruples disqual-
ify him from giving full scope and effect to the law. The
statute therefore wisely provides that in case one has con-
scientious scruples against enforcing the death penalty in
first-degree murder "he must neither be permitted nor com-
pelled to serve as a juror." We have already held on the
former appeal that there is no power lodged in any court to
influence or control, much less to direct, the jury with re-
gard to whether they shall or shall not make a recommenda-
tion, or what facts or circumstances they shall consider in
determining whether they will make a recommendation or
not. If our conclusions in that regard are sound, and we
think they are, we think it follows as a necessary corollary
that the court has no right to excuse a juror for cause, upon
the sole ground that he may be in favor of enforcing the
law with regard to punishment in first-degree murder which
is committed in the perpetration of robbery without a recom-
mendation on his part.

Counsel concede that they had no legal right to state to
the juror what they claimed the evidence would show, and
upon such a hypothetical case elicit from him a statement of
whether he would be in favor or against a recommendation
in the particular case. They do claim, however, that they
had a legal right to interrogate the juror with regard to wheth-
er he would or would not fairly consider the question of
whether a recommendation should be made or not. Con-
ceding this much for argument's sake, yet the challenge for
cause must fail. We are not combating the contention that
counsel cannot, within reasonable bounds and by proper ques-
tions, seek to ascertain the state of the juror's mind with re-
gard to whether there may not be circumstances under which
he believed it proper and would consider the question of rec-
ommendation, although he found the defendant guilty of
murder in the first degree. This inquiry, however, should
be permitted only for the purpose of enabling the accused to
exercise his peremptory challenges intelligently. In this case
the trial court gave the accused all the latitude in this regard

that any fair-minded man could claim. Indeed, we think the court could have materially curtailed the examination without infringing upon any legal rights of appellant. No hard and fast rule can be laid down in this regard, however, and the court must be guided by the personality of the juror and by other circumstances. The juror in question showed himself to be both intelligent and fair; and, unless the grounds contended for constituted a legal cause for challenge, there was no such cause. For the reasons stated, we are of the opinion that no legal cause for challenge was shown; and hence the court committed no error in overruling appellant's challenge against Juror Dunyan.

A juror by the name of Hart and another by the name of Rockwood were also challenged for cause upon the same ground and for substantially the same reasons as was Juror Dunyan, and the challenge in each case was overruled. For the reasons above stated, we think the challenge for cause in the two last instances were also properly disallowed.

A further assignment relates to the overruling of appellant's challenge for cause upon the ground that two jurors, who were called to serve, had formed opinions with respect to the guilt of appellant. Juror George M. Cannon in effect said that he had formed a decided opinion, which was unfavorable to the appellant, which he thought would require evidence to remove. He, in effect, testified on his *voir dire* that he had read the accounts of the robbery and shooting published in the local newspapers; that shortly after the shooting he had talked with a lady who said she was related to the deceased; that she related the circumstances of the killing to him as they were told to her, but she had no personal knowledge upon the subject; that his opinion was based upon the newspaper accounts, the statements of the lady aforesaid, and upon general rumors concerning the circumstances of the shooting and robbery, and from all he had heard and read, as aforesaid, he had made up his mind that the robbery and shooting was rather a "cold-blooded affair." The juror, however, also in substance stated that he fully understood the law to

the effect that all men are presumed innocent of the crime
charged until proven guilty beyond a reasonable doubt; that
the guilt of appellant should be determined alone from the
evidence produced at the trial; that he could and would lay
aside and disregard his present opinion and give the appel-
lant a fair and impartial trial; and that in arriving at the
verdict he would be controlled entirely by the evidence pro-
duced in court and the charge of the court. The juror, how-
ever, admitted that he would rather not serve in the case,
and that he had formed an opinion, as aforesaid.

We have a statute (Comp. Laws 1907, sec. 4836) which,
so far as material here, provides "no person shall be dis-
qualified as a juror by reasons of having formed or expressed
an opinion upon the matter or cause to be submitted to such
jury, founded upon public rumor, statements in public jour-
nals, or common notoriety, provided it appear to the court,
upon his declaration to the court, under oath or otherwise,
that he can and will, notwithstanding such an opinion, act
impartially and fairly upon the matters submitted to him."
The state of mind of a particular person who is called as a
juror cannot in every case be determined alone from read-
ing his answers to the questions that were propounded to
him upon his *voir dire*. Much depends upon the character
and personality of the individual juror. The same answers
made by two individuals may disqualify the one, but not
necessarily the other. This personal element the trial court
had in mind and considered, as appears from his rulings on
the challenges. This is also made apparent from the court's
rulings in sustaining numerous challenges for cause inter-
posed against other jurors. The court evidently was con-
vinced that Mr. Cannon, notwithstanding his opinion, was
nevertheless a fair and impartial juror. While from a mere
inspection and consideration of the questions and answers
as they appear in the printed record we might be inclined
to the view that the challenge for cause should have been
sustained, yet, in view of the provisions of the foregoing stat-
ute, the question is one which appealed to the sound discre-
tion of the trial court, and not to our discretion. That court

was in a better position to pass upon the real merits of the challenge than we are; and, unless it is clearly made to appear that the trial court abused the discretion vested in it, this court should not interfere. We think this is the doctrine that is generally followed by the courts, and is the one to which this court is committed. (See *State v. Haworth,* 24 Utah, 407, 68 Pac. 158, and cases there cited.) In other words, the question that arises under section 4836, *supra,* and which must be determined by the trial court, is one of mixed law and fact; and the reviewing court should interfere only when it is clear, as a matter of law, that the trial court erred in overruling a challenge for cause, when the case comes within the provisions of said section. See *People v. McGonegal,* 136 N. Y. 66, 32 N. E. 616; *Spies v. People,* 122 Ill. 261, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320; *Spies v. Illinois,* 123 U. S. 168, 8 Sup. Ct. 21, 31 L. Ed. 80; *Reynolds v. United States,* 98 U. S. 156, 25 L. Ed. 244, where statutes similar to section 4836, *supra,* were under consideration.

In *Reynolds v. United States, supra,* it is said:

"It is clear, therefore, that upon the trial of an issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as, in law, necessarily to raise the presumption of partiality. The question thus presented is one of mixed law and fact, and to be tried, as far as facts are concerned, like any other issue of that character, upon the evidence. The findings of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. . . . It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not, in law, be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court."

The doctrine laid down in the foregoing quotation is approved in all of the cases we have cited above. While, if we passed judgment upon the face of the record alone, we, perhaps, should have felt better satisfied if the court had sustained the challenge, yet, in view that much must be left to

the discretion of the trial judge, we cannot say that he erred
in overruling the challenge.

The same question is raised with respect to Juror Myton,
and the challenge for cause as to him was overruled for the
same reason that it was overruled as to Juror Cannon. What
we have said with respect to the challenge of Juror Cannon
applies with equal force to the challenge of Juror Myton;
and hence it follows that the latter assignment must also
fail.

Another juror, named Bemis, was also challenged for
cause, upon the ground that he was disqualified by reason of
actual bias. The alleged disqualification is based, not upon
any opinion that the juror had either formed or expressed
as to the guilt or innocence of appellant, or because he had
knowledge of any of the facts, or that he entertained any
feelings of bias or prejudice for or against him, but the
challenge is based upon the fact that the juror said
that, although he knew nothing concerning a certain
petition that was circulated among and signed by cer-
tain business men of Salt Lake City, yet, if the petition
had been presented to him, he "possibly would have signed"
it, as one of his business associates had done. The juror,
however, said that, although he might have signed the peti-
tion, yet it would in noway affect or influence his verdict.
The petition in question, it appears, was circulated by some
one some time after the shooting of the deceased, Fassell,
had occurred. The petition was addressed to the several de-
partments of the district court of Salt Lake County, and was
to the effect that said court should "postpone each and every
case now on your dockets that you may try and sentence
these red-handed rascals within one week, giving them the
full penalty their heinous crime entitles them to." The peti-
tion was, however, never presented to any court. It is broadly
urged by appellant's counsel that no person who admits that
he would have signed such a petition to the courts is, or can
be, qualified to sit as a fair and impartial juror. If the
juror by what he said had meant to be understood as ap-
proving the sentiments expressed in the petition, and that

understanding them he was in favor of having the courts comply with the request therein contained, we should fully agree with counsel's contention. We think it is clear from the whole examination of the juror, however, that by what he said he did not mean that he approved of the sentiments expressed in the petition, but simply meant that if he had been present when the petition was presented to his business associate he, without giving the matter any particular atten-tion or consideration, might possibly have signed it himself. We think the court was right in ruling that, notwithstanding the incident, the juror was nevertheless a fair and impartial juror; and hence the challenge for cause was properly overruled.

If we should assume, however, that any one or all of the foregoing challenges for cause should have been sustained, yet, in view of the circumstances disclosed by this record, appellant cannot complain of the court's ruling in that regard for the following reasons: Under the practice prevailing in this jurisdiction in homicide cases, and especially where the charge is first-degree murder, the jury to try the case is selected as follows: The panel is filled by calling twelve jurors into the box, and all of them are examined for cause, first by the defendant, then by the state, if further examination by it is desired. If there are any that are passed for cause, the parties must then exercise their peremptory challenges as to those passed for cause. The defendant is first called on to exercise one, and then the state one, and this method continues until each party has either waived or exercised the fifteen peremptory challenges allowed by law. If any jurors are thus accepted, they are at once sworn and are thereafter at each adjournment placed in charge of a special bailiff until twelve jurors are accepted to try the case. In pursuing the foregoing method, all of the challenged jurors to whom we have heretofore referred, after the challenge for cause had been denied, were peremptorily challenged by the appellant, and thus none of the jurors challenged for cause by the appellant passed on his case. When eleven of the twelve jurors had been passed on and

accepted by both parties, as aforesaid, appellant had exhausted all of his fifteen peremptory challenges. One juror was thus still to be selected after appellant's right to challenge peremptorily had been exhausted. The twelfth juror called was passed for cause by both the state and the appellant, and the juror, without any objection whatever, was accepted, and no claim was then made by the appellant, nor is such claim now made, that such juror, or any other who sat in the case, was not in every way qualified.

Counsel, however, contend that appellant was compelled to exercise a number of his peremptory challenges to remove jurors from the panel who should have been removed therefrom upon his challenge for cause. Upon the other hand, the Attorney-General contends that, although this were conceded, yet, in view that the appellant was satisfied with the jurors, eleven of whom he had passed before his peremptory challenges were exhausted, and in view that he does not complain that an objectionable juror was forced upon him after his peremptory challenges were exhausted, or that such a juror sat on the case, therefore appellant is not in a condition to complain. In other words, the Attorney-General contends that the record affirmatively shows that the jury who tried the appellant was a fair and impartial jury; that appellant at no time claimed or intimated that he had any objection to any one of them, and therefore appellant was tried by just such a jury as the Constitution prescribes. It is contended, therefore, by him that the fact that appellant had exhausted his peremptory challenges before the entire jury was selected is immaterial. In some jurisdictions it is held that in case the defendant is required to remove a juror by a peremptory challenge, when such juror should have been removed upon a challenge for cause, if one was properly interposed, and that where, as here, the defendant exhausts his peremptory challenges before the entire jury is selected, in such a case error is presumed, and the defendant is entitled to a new trial. (*People v. Weil,* 40 Cal. 268.) Other courts many years ago, as we shall see, have arrived at a contrary conclusion.

Thompson & Merriam on Juries, published in 1882, in referring to this subject, say:

"Will the law presume prejudice from the simple fact that the peremptory challenges were exhausted? Some courts answer this question in the affirmative; but, in the opinion of others, something more must be shown, namely, that after the peremptory challenges were exhausted some objectionable person took his place upon the jury, who would otherwise have been excluded by a peremptory challenge. The latter seems to be the better view. Conceding the challenge for cause to have been improperly overruled, it is evident that only under such circumstances as just stated can the loss of the peremptory challenge, necessary to cure the erroneous decision of the court, be said to have worked an injury to the challenging party."

(Thomp. & M. on Juries, sec. 276, subd. 4.) The authorities, *pro* and *con,* are collated in a footnote to said section.

The whole question of whether there is prejudicial error therefore turns upon whether prejudice will be presumed from the mere fact that the appellant was compelled to exercise one of his peremptory challenges to remove a juror whom he had challenged for cause, and who should have been removed upon the latter challenge, or whether, in order to show prejudicial error, the appellant must make it appear that an objectionable juror was forced upon him after his peremptory challenges were exhausted, and whom he would have removed from the panel by challenging him peremptorily if his challenges had not been exhausted, as aforesaid. If prejudice is presumed, it must be based upon the mere fact that the appellant was required to remove a juror by the exercise of one of his peremptory challenges, when the juror should have been removed upon the challenge for cause. To follow such a course is to lose sight of the fact that all that one who is on trial for a crime is entitled to is a fair and impartial jury, and that the right of challenge is given for the sole purpose of reaching that result. This is illustrated in one way by the fact that a defendant may and often does waive one or more of his peremptory challenges. He does so whenever he is satisfied with the jurors in the box, or is not certain that he can obtain others more favorable to

his cause. This may occur when he has exercised his last challenge just as well as when he had exercised his sixth, tenth, or twelfth challenge. The mere fact, therefore, that one on trial for a crime was compelled to challenge a juror peremptorily, when such juror should have been removed for cause, cannot give rise to a presumption that an objectionable juror was subsequently placed on the jury in place of the one that was challenged.

In this case there was but one juror to be selected when appellant's last peremptory challenge had been exercised. To the person who was called as the twelfth juror, there was no objection for cause or otherwise. If appellant had any personal or other objection to the juror, he should have indicated it then and there. True counsel says that the *voir dire* examination of the last juror disclosed no cause for challenge, and, in view that the court had previously announced that appellant's peremptory challenges had been exhausted, counsel had no alternative save to accept the juror. But if the last juror was a fair and impartial juror, and one against whom there was no objection, how was appellant prejudiced? If there was any reason why the twelfth juror was not impartial, or if appellant had discovered any reason why any one or more of the eleven jurors that had already been passed and accepted by him were unfair, he should have made the fact apparent to the court, and should have stated the grounds of his objections. It cannot be doubted that the court, in its discretion, could have removed any objectionable and unfair juror at any time before the jury was finally sworn to try the cause, notwithstanding the fact that all of appellant's peremptory challenges had been exhausted. Is it not clear that the situation so far as prejudicing the appellant is concerned is precisely the same as though he had waived his last peremptory challenge? As the matter now stands the record discloses that the appellant was tried by a fair and impartial jury, and that he at no time objected to any one of them, or intimated that he was forced to accept an objectionable juror after he had exhausted his peremptory challenges. Under the circumstances disclosed by this rec-

ord, there is therefore absolutely nothing upon which to base a presumption of prejudice, even though we were inclined to adopt the rule that in such cases prejudice will be presumed, which we are not. We think the only safe and rational rule is the one set forth in the quotation from Thompson & Merriam, *supra*.

The numerous cases, *pro* and *con,* upon this question are found in a note to a recent case, entitled *Sullins v. State,* reported in 9 Ann. Cas. 279-281, to which we refer the reader.

In addition to the foregoing, we remark that we have carefully examined the whole evidence preserved in the bill of exceptions, and there is absolutely no dispute nor conflict with regard to any fact relating to appellant's guilt. That the appellant shot and killed the deceased, and that he did so for the purpose of and while perpetrating robbery, is established beyond all possible question of a doubt. Indeed, no juror could have rendered a verdict other than guilty without violating his oath. As was said in *Sullins v. State,* 79 Ark. 127, 95 S. W. 159, 9 Ann. Cas. 275, where the proof is such that no other verdict save one of guilty is legally permissible, courts will not reverse a case because some complaint is made against a juror, or some of the jurors.

There is also some complaint made because the court refused appellant's counsel permission to propound a certain question to a juror who sat in the case, and who was accepted by appellant before he had exhausted his peremptory challenges. The record shows that the juror answered the question before the court sustained the objection urged thereto. Appellant therefore obtained the benefit of the juror's answer, which was in accordance with counsel's desire. Counsel, however, contend that by the court's ruling they were prohibited from propounding the same question to other jurors, and that by reason of that fact appellant was prejudiced. The court's ruling was, however, proper; and hence appellant has no legal cause for complaint.

Upon the trial the prosecuting attorney called the mother of the deceased as a witness. She really testified to no material fact or facts; and the court, on motion of appellant's counsel, struck out all of her testimony, except that the deceased was in good health on the day he was shot. The court thereupon directed the jury not to consider the matters testified to by her. We cannot see how appellant was prejudiced by anything the witness testified to, although the jury had considered her testimony. The objection and complaint of counsel is, however, not directed so much to what the witness testified to, as it is to the fact that the prosecuting attorney called her as a witness in the case. It is contended that the prosecuting attorney was unfair, and was guilty of bad faith in calling the witness at all, and that he did so for the sole purpose of arousing the prejudices of the jurors against the appellant. So far as the record shows, we are unable to see why the mother of the deceased should have aroused the prejudices of the jurors against appellant. Her testimony certainly could not have had such an effect. What her acts and conduct were is not disclosed. The witness, however, had a perfect right to come into court and witness the proceedings; and, if her mere presence in court, in case her conduct was proper, enlisted the sympathy of the jurors in her behalf or aroused their prejudices against appellant, the court was powerless to prevent such a result. If men, young or old, will enter upon a life of crime, and in their mad career will resort to robbery and murder, they must submit to an open and public trial at which anyone may be present. The relatives and friends of the one who may have been robbed or murdered have just as much right to be present at such trials as anyone else, and they may also be called as witnesses and testify to any material matter of fact; and the mere fact that such a relative may be called, whose testimony, after it has been elicited, is by the court found to be immaterial and stricken out, affords no grounds for a new trial.

Another assignment relates to the conduct of the prosecuting attorney in arguing the case to the jury. In his ar-

gument he seemed desirous of impressing them with
the importance of finding the appellant guilty of first-
degree murder without a recommendation, so that he
should suffer the death penalty. The particular part of the
argument excepted to is as follows:

"The purpose and the reason back of this argument is
that through a misguided sentiment another power may
open the doors of the state prison and turn this man and
other murderers loose here in the State of Utah to go out and
slay."

The court very promptly said that the argument was im-
proper, and the attorney thereupon withdrew his remarks.
The Attorney-General has cited some cases in which it is
held that such a remark is not improper. We cannot yield
assent to such a doctrine. Such arguments, generally made
on groundless claims and influenced by impassioned asser-
tions, merely breed contention and disrespect, and too often
tend to divert the attention of the jury to matters other than
the law and the evidence. If prosecuting officers have any
complaints to make because of the exercise of certain powers
that are conferred by law upon another tribunal, they should
make such complaints at a proper time and place, and not
seek to influence a jury to do something to prevent such
other tribunal from passing judgment upon the case upon
its merits, when it is actually brought before it. Neither
the prosecutor nor the jury are or can be held responsible
for the acts of the "power" whose duty it may become to
pass upon the question whether a sentence shall be com-
muted or not. In any event, the argument of the prosecutor
can be of no avail. If the "power" to which he referred
should feel impelled to turn convicted murderers loose, that
"power" could just as well do so when the murderer is sen-
tenced to death as it could if he is merely sent to the state
prison for life. Such arguments, therefore, even in the
cases cited, could effectuate no purpose in this state save to
arouse the prejudices of the jury, and hence should be scru-
pulously avoided. In view of the overwhelming and uncon-
tradicted evidence of appellant's guilt, however, we cannot

see how what was said, in view that it was immediately withdrawn and pronounced improper by the court, could have prejudiced the appellant. The testimony certainly did not call for nor warrant any milder verdict than the one the jury returned against appellant, and he cannot complain simply because he did not receive something at their hands as a matter of grace.

The charge of the court is also excepted to. Practically the same objections are now urged as were urged on the former appeal, with the one exception of the charge on the question of recommendation, which was criticised in the former opinion, and which was omitted. The other portions of the charge were carefully gone over in the former opinion, written by Mr. Justice Straup, and we are satisfied with the conclusions there reached. A certain request to charge offered by appellant was refused by the court, in which it was asked to charge that the jury might find the appellant guilty of either murder in the first degree, or murder in the second degree. The court refused to so charge, but charged the jury that they could find the appellant guilty of murder in the first degree with or without a recommendation, or not guilty. The court's charge was proper. There was no evidence upon which the jury could base a verdict of second-degree murder. Under the undisputed evidence and under his own admissions, appellant was guilty of murder in the first degree, or he was not guilty at all.

It is also urged as error that the court erred in admitting in evidence appellant's confessions of guilt and his testimony given in chief in his own behalf on the former trial. There is no doubt whatever that the court's rulings on both propositions were correct.

We can discover no cause for which either the trial court, or this court, is authorized to grant a new trial. We are thoroughly convinced that appellant has had a fair and impartial trial, and that the verdict and judgment are right.

In conclusion, we desire to express our thanks and appreciation to counsel, both for the state and the appellant,

for the able and conscientious manner in which the case was presented. We especially desire to commend counsel for appellant, who, without compensation or means, have most ably defended the appellant, who came into this state only a few days before the crime for which he stands convicted was committed.

In view of what has been said, the judgment should be, and it accordingly is, affirmed.

McCARTY and STRAUP, JJ., concur.