139 N.J. Super. 373 (1975)
354 A.2d 103
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM SEIGEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Law Division (Criminal).
November 20, 1975.
*375 Mr. Gary S. Spagnola, Assistant Prosecutor, argued the cause for respondent (Mr. C. Judson Hamlin, Prosecutor of Middlesex County, attorney).
Mr. Edward Bloch for defendant.
APPLEBY, J.S.C.
Defendant is charged with violation of N.J.S.A. 2A:115-1.8, the sale of obscene material, as defined by N.J.S.A. 2A:115-1.7, to persons under 18 years of age. It is defendant's contention that he cannot be found guilty under this statute because it is unconstitutional and void for being vague and indefinite, in violation of the N.J. Const. (1947), Art. I, par. 1, and the Fifth and Fourteenth Amendments to the United States Constitution.
Specifically, defendant asserts that the statute "fails to state narrowly-drawn, reasonable and definite standards to measure what materials fall into the category of being obscene." In addition he argues that a State has no right to establish different standards in determining obscene materials for adult and minors.
Addressing defendant's last argument first, it has been established for some time that a state or city, because of its strong and abiding interest in its youth, is not without authority to limit the access to minors of materials which would be objectionable as to them, but would not be objectionable in its appeal to adults. Cinecom Theatres Midwest *376 St. Inc. v. City of Fort Wayne, 473 F.2d 1297 (9 Cir.1973); Interstate Circuits v. Dallas, 390 U.S. 676, 690, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Ginsburg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). On the authority of Ginsburg, a city, in order to protect its children, can restrict a child's exposure to nudity in an obscene context, and can define obscenity as it relates to only children. Cinecome Theatres Midwest St. Inc. v. Fort Wayne, supra. Thus, as to some materials, sales to adults may be a constitutionally protected activity, while sales of the same material to minors may be barred and punished. This concept of "variable obscenity" in statutes is generally upheld.[1]
Defendant, in his brief, conceded that the New York statute (under attack in the Ginsburg case), in its definition of obscenity as it relates to minors, was held to have a rational relation to a legitimate state objective of safeguarding minors from harm. Is it defendant's contention that the New Jersey statute, N.J.S.A. 2A:115-1.8, has no such interest and objective? The power and authority of a state to protect its youth from objectionable materials and establish two standards of obscenity, one for adults and one for minors, is firmly planted. The United States Supreme Court in the Ginsburg case adopted the language in Bookcase *377 Inc. v. Broderick, 18 N.Y.2d 71, 271 N.Y.S.2d 947, 218 N.E.2d 668 (Ct. App. 1966), app. dism. sub nom. Bookcase, Inc. v. Leary, 385 U.S. 12, 87 S.Ct. 81, 17 L.Ed.2d 11 (1966), to uphold the validity of the statute:
Material which is protected for distribution to adults is not necessarily constitutionally protected from restriction upon its dissemination to children. In other words, the concept of obscenity or of unprotected matter may vary according to the group to whom the questionable material is directed or from whom it is quarantined. Because of a State's exigent interest in preventing distribution to children of objectionable material, it can exercise its power to protect the health, safety, welfare and morals of its community by barring the distribution to children of books recognized to be suitable for adults. [390 U.S. 629 at 636, 87 S.Ct. at 1278.]
Thus, the cases before Ginsburg, as well as its progeny, seem to have adopted the common sense approach to the problem in having consistently allowed a state to be more strict in its regulations of obscene materials circulated among minors.
The second issue raised by the defendant is the constitutionality of N.J.S.A. 2A:115-1.7 and N.J.S.A. 2A:115-1.8. Specifically, it is his contention that the statute in question does not comport with the latest standards and definition of obscenity set out in 1973 by the Supreme Court of the United States in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), reh. den. 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973).
In Miller the Supreme Court dealt with a defendant who was charged with the distribution of obscene materials (not to minors). In doing so it announced a new standard to determine obscene material for adults. The new test which is to be considered by the triers of fact in passing on obscene material is:
(a) Whether "the average person applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the state law; and (c) whether the work, taken as a *378 whole, lacks serious literary, artistic, political or scientific value [413 U.S. 15, at 24, 93 S.Ct. at 2615: emphasis supplied]
The primary concern of the new standard was fair and adequate notice to persons engaging in the sale of this type of material of what activity and material is not protected. The Supreme Court went so far as to give two examples of what a state could define as being obscene in an effort to further satisfy due process requirements.
The New Jersey Supreme Court in State v. DeSantis, 65 N.J. 462 (1974) took the opportunity to construe N.J.S.A. 2A:115-1.1 and N.J.S.A. 2A:115-1.1a, the adult obscenity statute, in accordance with the guidelines and definition announced by the Supreme Court in Miller v. California, supra. Thus, N.J.S.A. 2A:115-1.1 and N.J.S.A. 2A:115-1.1a, as a result, comported with the constitutional limitations, and those retailers and distributors of pornographic material were put on notice and given fair warning of what material is within and what material is without the law.
The Miller case, as noted in defendant's brief, did not deal with state statutes proscribing sale of obscene material to minors. And likewise the DeSantis case did not concern itself with it. However, notwithstanding the fact that Miller and DeSantis came after N.J.S.A. 2A:115-1.7 and N.J.S.A. 2A:115-1.8, this court is of the opinion that defendant had adequate notice and was given the requisite fair warning as required by the Due Process Clause of the New Jersey and United States Constitutions. That is, both N.J.S.A. 2A:115-1.7 and N.J.S.A. 2A:115-1.8 comport with the constitutional limitations set out in Miller and complied with by DeSantis.
N.J.S.A. 2A:115-1.7 defined obscene material for persons under 18 years of age:
* * * any description, narrative account of depiction of a specified anatomical area or specified sexual activity contained in, or consisting of, a picture or other representation, publication, sound recording or film, which, by means of posing, composition, format or *379 animated sensual details, emits sensuality with sufficient impact to concentrate prurient interest on the area of activity. b. "Specified anatomical area" means (1) less than completely and opaquely covered human genitals, pubic region, buttock or female breast below a point immediately above the top of the areola; or (2) human male genitals in a discernibly turgid state, even if covered. c. "Specified sexual activity" means (1) human genitals in a state of sexual stimulation or arousal; or (2) any act of human masturbation, sexual intercourse or sodomy; or (3) fondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breast.
This statute seems to definitely comply with the second standard of Miller in that it specifically defines the proscribed act  but with a workable definition. The standards set out in the above definition are narrowly-drawn, reasonable and as definite as a workable statute can be. To narrow it further would effectually create loopholes therein.
Defendant also complains of the fact that there is no language in the statute requiring that a material be "patently offensive." It would seem that in this particular instance the Legislature went a step further by giving specific mention to many of the kinds of activity that are outlawed. Subsection (c) of N.J.S.A. 2A:115-1.7 gives several examples of "specified sexual activity" that is outlawed: (1) human genitals in a state of sexual stimulation or arousal; or (2) any act of human masturbation, sexual intercourse or sodomy * * *" Can it be gainsaid that such material is patently offensive? This court thinks not.
The first requirement of Miller is easily met in that N.J.S.A. 2A:115-1.7 requires that the material "emits sensuality with sufficient impact to concentrate prurient interest on the area of activity."
It goes without saying that in this case "the average person" is that person 18 years of age or older, the trier of fact, not a person under 18, since it is his very irresponsibility, immaturity and inability to cope with adult materials that warrants the special consideration. Various obscenity statutes upheld as constitutional in other states provide that *380 the trier of fact is to determine whether the material appeals to the prurient interest of minors.[2]
As to the language, "taken as a whole" in the first requirement of the test, part (a), this element of the test is satisfied by the language N.J.S.A. 2A:115-1.7  "with sufficient impact to concentrate prurient interest * * *" There is no requirement that the exact language of the Miller test be incorporated by a state in its statute. Defendant points out in his brief that
The definition set forth in the Statute would mean that a scene depicting an act of coitus in a film of great literary merit which emits sensuality with sufficient impact to concentrate prurient interest on that particular activity would be obscene and unavailable to young persons under the age of 18.
This would not appear to be a likely combination  a scene, in certain material, depicting the act of coitus in a film of great literary merit, which emits sensuality with sufficient impact to concentrate prurient interest on that particular activity. "Concentrate prurient interest," as used in this statute, appears to mean to emphasize and preoccupy one's prurient interest. It would appear that in order to do so the material would have to be taken as a whole. And if the entire work, taken as a whole, does not in fact appeal to one's prurient interest, then it would seem that the portion of the material which does not appeal to one's prurient interest is out of context and inconsistent with the nature and spirit of the entire work. This would suggest possibly that the non-objectionable portion is merely a front or guise for that portion which is objectionable.
*381 As to the last requirement, that "the work, taken as a whole, lacks serious literary, artistic, political or scientific value," the same argument would apply. It is simply ludicrous to posit the proposition that the same material can be of "serious literary, artistic, political or scientific value" and yet "concentrate (one's) prurient interest." And even if it could, the Supreme Court in Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), where this requirement was first stated, recognized that an appropriately drafted variable obscenity statute could survive constitutional scrutiny even though it lacked the third requirement. (See State v. Settle, 90 R.I. 195, 156 A.2d 921 (Sup. Ct. 1959), which is cited by Jacobellis as bearing illustration of an appropriately drafted variable obscenity statute despite its lack of the third requirement.)
Defendant most inappropriately attempts to liken N.J.S.A. 2A:115-1.7 to the New York statute which was struck down in Rabeck v. New York, 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed. 2d 741 (1968). The statute there in question (§ 484-i) prohibited the sale of "any * * * magazines * * * which would appeal to the lust of persons under the age of eighteen years or to their curiosity as to sex or to the anatomical differences between the sexes." The court there held that this standard was unconstitutionally vague and said that it is no matter that the statute
* * * "was adopted for the salutary purpose of protecting children. The permissible extent of vagueness is not directly proportional to, or a function of, the extent of the power to regulate or control expression with respect to children". [391 U.S. at 462-463, 88 S.Ct. at 1716]
This court agrees with the court in Rabeck. The statute that it dealt with was obviously too vague to comply with constitutional due process requirements. But it seems to this court that it is equally obvious that no fair comparison can be made of § 484-i of the New York statute and N.J.S.A. 2A:115-1.7.
*382 Nor can it be said that N.J.S.A. 2A:115-1.7 is so vague as to be out of proportion to or not a function of the extent of the power to regulate or control expression with respect to children. As indicated above, N.J.S.A. 2A:115-1.7 could not be much more specific or narrowly drawn without creating loopholes and thereby frustrating its intended purpose.
Defendant's objection to the drawing of the line by the Legislature at 18 to distinguish adults from minors begs for comment  though deserving of little. Defendant contends that N.J.S.A. 2A:115-1.7 "creates a fictitious line in dealing with human beings" and is not realistic because it fails to in any way refer to "intellectual development."
To this the court can only answer that the test must be objective and clear. A subjective standard such as "intellectual development" would make for the unenforceability of the statute, or at the very least enforceability would be so difficult as to unduly burden the Courts. For, would it not be the case that every defendant would claim, in defense of himself, that he distributed or sold his obscene material to persons of that "intellectual development" that is protected by the statute, thus requiring time-consuming proofs to be made at trial? This court thinks so. Not to mention the fact that the ages of 17 and 18 are almost universally accepted as the dividing line between adults and minors.
As set out above, N.J.S.A. 2A:115-1.7 does not violate the constitutional due process requirement. It overcomes constitutional due process hurdles in several respects. First, the statute addresses itself to minors, and thus is allowed more latitude than a statute regulating obscenity as applied to adults. Cases prior to Ginsburg (e.g. Jacobellis and Bookcase, Inc.) and after Ginsburg are authority for this fact. Obscenity statutes are to be tailored for the particular group to which they apply.
Second, N.J.S.A. 2A:115-1.7 is not inconsistent with the standards announced in Miller. There is merely an employment of different language. And finally, the last requirement *383 of the test can be disregarded, if necessary, on the authority of Jacobellis v. Ohio, supra, since N.J.S.A. 2A:115-1.7 is an appropriately, reasonably and narrowly drafted variable obscenity statute. Furthermore, we must not lose sight of the fact that the standards announced in Miller did not apply to minors, nor were they intended to govern the definition of obscenity as applied to minors.
The motion is denied.
NOTES
[1] In Ginsburg, the court mentions in footnote 6 the fact that many commentators, including many committed to the proposition that "no general restriction on expression in terms of `obscenity' can * * * be reconciled with the first Amendment," recognize that "the power of one State to control the conduct of children reaches beyond the scope of its authority over adults", and accordingly acknowledged a supervening state interest in the regulation of literature sold to children. Emerson, "Toward a General Theory of the First Amendment," 72 Yale L.J. 877, 938 (1963).

Regarding a state's authority to restrict material directed towards minors, see generally, Lockhard and McClure, "Censorship of Obscenity: The Developing Constitutional Standards," 45 Minn. L. Rev. 5 (1960); Emerson, "Toward a General Theory of the First Amendment," 72 Yale L.J. 877, 939 (1963); Albany L. Rev. 133, 138 (1966); Note, 54 Geo. L.J. (1966).
[2] See N.Y. Penal Law § 484-h (McKinney 1909), held constitutional in Ginsburg v. New York, supra; Fla. Stat. Ann. § 847.013(1) (1969), held Constitutional in Davison v. State, 288 So.2d 483 (Fla. Sup. Ct. 1973); Wash. Rev. Code 9.68.050 (1969) held constitutional in City of Tacoma v. Naubert, 30 Cal. Rptr. 828, 381 P.2d 652 (Wash. Sup. Ct. 1971).