STATE of Utah, Plaintiff and Respondent,

v.

INTERNATIONAL AMUSEMENTS, dba Adult Book and Cinema Store, David Andrew Pauly, Manager, Stuart Lee, Hersel Richardson, Jr., and Kenneth Cleveland,. Defendants and Appellants.

No. 14535.

Supreme Court of Utah.

June 13, 1977.

Brian R. Florence, of Florence & Hutchison, Ogden, for defendants-appellants.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

HALL, Justice:

The defendants were found guilty of distributing pornographic material in violation of Utah Code Ann., Sec. 76–10–1204 (Supp. 1975). Defendants ask that their convic-

tions be set aside, arguing that the District Court of Weber County erred in its instructions to the jury in three respects: First, that it failed to instruct the jury on the required element of scienter; second, that it failed to instruct the jury that the contemporary community standards by which the jury was to evaluate the material were statewide standards; and third, that it erred in instructing the jury that children could be considered in evaluating the conscience of the community.

The fundamental and most important right of freedom of expression is stated in clear and comprehensive language in the Constitution of the State of Utah, Sec. 1 of Article I:

All men have the inherent and inalienable right to enjoy and defend their lives and liberties . . . [other rights stated] . . . to communicate freely their thoughts and opinions, being responsible for the abuse of that right.

Section 76–10–1204, U.C.A.1953 provides that a person is guilty of distributing pornographic material when he knowingly engages in the proscribed activities of distributing pornographic material, and Section 1201(4) thereof defines "knowingly" as "an awareness, whether actual or constructive, of the character of material . . . ."

■ Turning now to the first assignment of error, the foregoing constitutional and statutory provisions make it clear that scienter is a necessary element of the crime charged.

A review of the record reveals that the trial court adequately dealt with the element of scienter numerous times throughout the trial beginning with the voir dire examination of the prospective jurors, again by reading the information which contained the statutory terminology as it pertains to "knowingly," and finally by way of its entire instructions to the jury and specifically number 10, 20 and 24 dealing

with mental state, circumstantial evidence, and the integral nature of the instructions, respectively.

The fact that defendants failed to take exception to any claimed omissions in the court's instructions to the jury also bears upon this appeal. State v. Kazda, Utah, 545 P.2d 190 (1976),[1] holds that where a party so fails to object and furnish a proper request to supply any claimed deficiency in instructions he is precluded thereafter from contending error.

■ There is, of course, an exception to the foregoing principle, and that is, if the giving or failure to give certain instructions is so palpable as obviously to reflect prejudice amounting to denial of due process.[2] However, such is not the case here, and any error that may exist in the court's instructions is not prejudicial error. The instructions when viewed as a whole, and all of the trial proceedings, clearly cover the element of scienter as it pertains to all defendants.[3]

■ In regard to the interpretation of Section 76–10–1201(12), U.C.A.1953 (Supp. 1975), the trial court properly determined that the same did not require the application of a statewide standard. The wording of the statute clearly establishes a local standard as opposed to a statewide standard by adopting the following language:

. . . those current standards in the vicinage where an offense alleged under this act has occurred, is occurring, or will occur.

Although the geographic area is not specifically described, the use of the term "vicinage" is clearly lesser in area than the total confines of the State of Utah. Webster defines "vicinage" as an adjacent, neighboring, or surrounding district; a limited area; neighborhood, or vicinity.[4] The trial court logically determined that such was the jurisdictional area from which the jury was drawn. It is not reasonable to view it

1. See also State v. Villiard, 27 Utah 2d 204, 494 P.2d 285 (1972), which cites a long line of authority, and see also State v. Smith, 45 Utah 381, 146 P. 286 (1915).

2. See State v. Cobo, 90 Utah 89, 60 P.2d 952 (1936).

3. 23A C.J.S. Criminal Law § 1321(1).

4. Webster's Third New International Dictionary of the English Language, Unabridged, 1961.

otherwise, since, as a practical matter, how could any "statewide" standard applied by a St. George, Utah, jury, for example, be the same as a "statewide" standard applied by an Ogden, Utah, jury? This particular point was discussed in *Jenkins v. Georgia*[5] where the Court stated:

. . . *Miller* held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of "contemporary community standards" as defined in *Miller* without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller*. [Citing *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)].

As to the equal protection concern that an act could be found to be criminal in one state area and not in another, the case of *Hambling v. U. S.*[6] had this to say:

A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a "reasonable" person in other areas of the law.

■ The *Hambling* case reasonably infers that merely because findings of one jury may differ from another on identical fact situations that equal protection does not suffer and that a jury should be able to determine what effect alleged pornographic material would have on an average person within the community, without regard to age, sex, etc., and this goes to the last point on appeal, i. e., whether the jury instruction which made a reference to children was in error.

■ It must be specifically noted that the age limits of those persons having access to the alleged pornography was not an issue at trial. Be that as it may, it also must be specifically noted that the instruction in question, as given, was extracted nearly verbatim from the statute[7] which reads as follows:

"In any prosecution dealing with an offense relating to pornographic material or performances, or dealing in harmful material, *the question whether material or a performance appeals to prurient interest in sex shall be determined with reference to average adults or average minors as the case may be.*" [Emphasis added.]

The adoption of this language in the instruction was clearly an attempt to clarify and define the classification of average person. It certainly was not prejudicial in nature, particularly in view of the fact that age was never an issue at trial. There is no reason to believe that the jurors seized upon this singular reference to minors and solely based their judgment thereon, and it is not reasonable to believe that the trial result would have been different had no such reference been made.

Affirmed.

ELLETT, C. J., and CROCKETT, J., concur.

WILKINS, Justice (dissenting).

I respectfully dissent. Addressing first the issue of scienter, it is constitutionally impermissible to construe and apply an anti-obscenity statute so as to hold a defendant strictly liable for prohibited activity regardless of his lack of knowledge of the character of the materials he possesses and sells. The United States Constitution as interpreted in *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), will not tolerate such a restriction on the freedom of the press. The Utah Legislature has spoken definitively in regard to the particular mental state required. Utah

5. 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).

6. 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

7. Section 76–10–1203(2), U.C.A.1953 (Supp. 1975).

Code Ann., Sec. 76–10–1204 states "A person is guilty of distributing pornographic material when he *knowingly* engages in the proscribed activities of distributing pornographic material." (Emphasis added.) Section 76–10–1201(4) defines "knowingly" as "an awareness, whether actual or constructive, of the character of material . . ." Thus, defendants are correct in their assertion that scienter is a constitutionally and statutorily required element of the crime of which they were convicted.

Defendants, however, failed to take exception to the omission in the jury instructions of the element of scienter or to submit instructions that would cure the defect. As announced in *State v. Kazda*, 545 P.2d 190 (Utah 1976):

> [T]he standard rule is that when a party fails to make a proper objection to an erroneous instruction, or to present to the court a proper request to supply any claimed deficiency in the instructions, he is thereafter precluded from contending error.

The purpose of this rule, of course, is to provide the trial court with an opportunity to correct any defects in its instructions in time for the jury to deliberate properly on the matter.

An error in jury instructions may result in reversal regardless of the party's failure to object, however, if the error is so obvious and prejudicial that it would amount to a denial of due process. *State v. Villiard*, 27 Utah 2d 204, 494 P.2d 285 (1972). It must therefore be determined whether the error in this case was such as to require reversal.

The State has presented an argument that the jury instructions in this case, when taken as a whole, did sufficiently apprise the jury that scienter was a requisite element of the offense with which defendants were charged. Instructions four, five, and six, concerning Defendants Richardson, Lee, and Cleveland, contained no reference to the requisite element of scienter. Instructions eight and nine, however, concerning Defendants Pauly and International Amusements, dba Adult Book and Cinema Store, stated that a verdict of guilty could only be reached if it were found that the Defendant "knew or should have known that such a book was displayed for sale . . .." Additionally, instruction ten stated:

> You are instructed that every person acting with the *mental state* for the conduct of this offense who directly commits the offense, or who solicits, requests commands, encourages, or intentionally aids . . . shall be liable for such conduct. [Emphasis added.]

Furthermore, although not part of the jury instructions, the Trial Court during voir dire pointed out to the jury, in an explanation of principal-agent liability:

> [I]f A employs B to commit a crime on behalf of C, they would all be liable if they had the same criminal *intent* and that is what they are charging here. But you would not be liable unless you intended the commission of the crime charged. [Emphasis added.]

Defendants Pauly and International Amusements argue that the knowledge called for by instructions eight and nine relates to the book's being displayed for sale rather than to the nature of the content of the book. Since the instruction refers to "*such* a book" and goes on to define when a book constitutes illegal pornography, there is little doubt that the knowledge requirement can fairly be understood to apply to the character of the book, as required. Though a clearer instruction on scienter would be preferable, it cannot be said that the court erred in instructions eight and nine.

As to Defendants Richardson, Lee, and Cleveland, however, I do not believe that the handful of references to "mental state" found when examining the instructions as a whole is sufficient to ensure that said defendants were not denied due process of law. Perhaps under other circumstances the Court's error in failing to instruct on a particular element of crime could be mitigated or eliminated by such corrective references. Because the error in this case impinges on the rights of free speech,[1] however, I hesitate to merely infer that the

---

1. Utah Const., Art. I, Sec. 1; U.S.Const., Amend. I.

jury correctly understood the requisite elements of the crime. On this matter of scienter, I believe it must explicitly be brought to the jury's attention that a defendant cannot be found guilty unless ". . . he knowingly engages in . . distributing pornographic material".

The second issue raised by defendants on appeal is whether or not the jury should have been instructed that statewide contemporary community standards were to be used in evaluating the materials. In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court indicated that a nationwide standard was not constitutionally required, and it approved the statewide standard applied in California. In *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and in *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), the Court made clear that *Miller* did not require a statewide standard to be applied, and it left to the states the ultimate decision as to what "community" standards should be used to evaluate allegedly obscene materials. The Court also expressly approved of the trial court's instructions in *Jenkins,* which directed the jurors to apply "community" standards without having specified the "community" in precise geographical terms.

Utah Code Ann., Sec. 76–10–1201(12) defines contemporary community standards as "those current standards in the vicinage where an offense alleged under this act has occurred . . ." and the District Court closely adhered to this definition in instructing the jury. This Court is called upon, for the first time in this State, to determine if "community" or "vicinage", must be interpreted to refer to the state as a whole. As mentioned above, the U.S. Supreme Court does not mandate such an interpretation. The Utah Constitution, however, in Article I, Sec. 24, states that "all laws of a general nature shall have uniform operation." The laws enacted by the Utah State Legislature to prohibit the distributing of pornographic and other harmful materials are surely "of a general nature", no less or more so in one part of the State than in another. Therefore the effect to be given these laws must be uniform throughout the State. To convict a defendant of distributing pornographic materials in one part of the State by applying strict local community standards while acquitting a similar defendant in another part of the State because more lenient community standards prevailed would constitute a denial of equal protection of law. Therefore, I believe that the "contemporary community standards" to be applied, in determining whether the average person would deem the material in question pornographic, should be statewide in scope.

The third issue raised by defendants is whether the District Court erred in instructing the jury to consider children in evaluating the conscience of the community, which instruction stated:

In this case . . . you are the exclusive judges of what the common conscience of the community is, and in determining that conscience you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious . . . men, women and children.

Utah Code Ann., Sec. 76–10–1203(2) (Supp.1975) provides:

In any prosecution dealing with an offense relating to pornographic material . . . the question whether material . . . appeals to prurient interest in sex shall be determined with reference *to average adults or average minors as the case may be.* [Emphasis added.]

The State argues that this language can be read to include children in the determination of the "average person" to be affected by the material. This misinterprets the statute, which indicates rather that where materials are made available to minors their impact on the "average minor" is to be evaluated. There is no evidence in the record that the materials here involved were made available to minors. If the jury did consider the impact of the material on children as well as on adults, it is clear that a finding that the material was pornographic could be reached much more readily

than if its impact on adults alone was considered.[2] I cannot say that such an error was harmless.

This case should therefore be reversed and remanded for a new trial.

MAUGHAN, Justice, concurs in Justice WILKINS' dissent.

---

**2.** Our statute, § 76–10–1203(2), supra, recognizes a distinction between adults and minors concerning what "appeals to prurient interest in sex". The United States Supreme Court—and other courts—recognize along this vein that minors may be accorded a more *restricted* right than adults to judge what material they may read or see. See *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); and *State v. Seigel*, 139 N.J.Super. 373, 354 A.2d 103 (1975).