STATE of Utah, Plaintiff and
Respondent,

v.

Kenneth E. PIERREN, Defendant
and Appellant.

STATE of Utah, Plaintiff and
Respondent,

v.

EAGLE BOOK, INC. and Arthur Adalid,
Defendants and Appellants.

STATE of Utah, Plaintiff and
Respondent,

v.

EAGLE BOOK, INC. and Luana Hall
Haig, Defendants and Appellants.

STATE of Utah, Plaintiff and
Respondent,

v.

EAGLE BOOK, INC. and Willie Williams,
Defendants and Appellants.

Nos. 14912, 15108, 15109 and 15114.

Supreme Court of Utah.

July 26, 1978.

Steven R. McCaughey, Salt Lake City, Arthur M. Schwartz and Neil Ayervais, Denver, Colo., for defendants and appellants.

Robert B. Hansen, Atty. Gen., Theodore L. Cannon, Asst. Atty. Gen., Salt Lake City, Robert L. Newey, Weber County Atty., Ogden, for plaintiff and respondent.

1. Utah, 578 P.2d 837 (1978).

HALL, Justice:

Defendants appeal conviction of violating U.C.A., 1953, 76–10–1204, distribution of pornographic material. Pierren was tried on November 11, 1976 (hereinafter "first trial"). Adalid, Haig, and Williams were jointly tried on March 14 and 15, 1977, (hereinafter "second trial"). Eagle Books was tried jointly with each individual defendant. The cases were consolidated for this appeal.

Defendants assert five points on appeal: 1) the statute under which they were convicted is constitutionally defective; 2) closing remarks made by defense counsel in the first trial substantially admitted guilt thereby depriving defendants of effective assistance of counsel; 3) the trial courts erred in failing to define the geographical limitation of "community standards"; 4) the court's refusal to grant a change of venue in the second trial was an abuse of discretion; 5) the exclusion from the jury of individuals between the ages of 18 to 21 violated defendants' Sixth Amendment right to a fair trial.

The first point was recently considered in *State v. Haig*[1] wherein this Court upheld the constitutionality of the challenged statute and we now reaffirm that holding.

The second point, in effect, challenges tactics employed by defense counsel in the trial of Pierren. In order to be found pornographic under the Miller standard[2] three conditions must be met. The material must be found to be (1) appealing to the prurient interest; (2) depicting sexual conduct in a patently offensive way; and (3) lacking in serious literary, artistic, political, or scientific value. Rather than challenging all three of these criteria, the defense conceded the last two in his closing statement and focused his attention (and the jury's) on the first criterium. Counsel has substantial latitude in selecting trial strategy. To show inadequate or ineffective counsel, the record must establish that counsel was ignorant of the facts or the

2. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

law, resulting in withdrawal of a crucial defense, reducing the trial to a "farce and a sham."[3] No such showing has been made, hence the claim is without merit.

Defendant's third claim is that in both trials the court erred in failing to define to the jury the geographical limitations of the phrase "community standards." Contemporary community standards is defined by statute to mean those current standards in the vicinage where an alleged offense has occurred, is occurring, or will occur.[4] In *State v. International Amusements*,[5] this language was construed by this Court to establish a local standard as opposed to a state-wide standard. In that case, we held that "vicinage" is the jurisdictional area from which a jury is drawn. Utah has a unique history in the establishment of its communities. At the direction of their political and ecclesiastical leaders, our forebearers settled in various outlying areas of the state and numerous communities were born. Subsequently, the state legislature divided the state into counties according to various considerations. Certainly geography and proximity to governmental administration must have been considered, along with the common interests of the people of the area. The state judicial system has followed these legislative guidelines in calling jurors from the county in which the cause arises.[6] There has long existed a basic right to be tried by one's peers, and no one is better qualified to know what the standards of the community are, than are those peers.

In the second trial, the court explicitly explained what "community" means in providing the jury with the following instructions:

No. 24 'Contemporary community standards' means those current standards in the Weber County area.

No. 32 In this case, you the jury, and you alone are the exclusive judges for expressing the view of the average person and of the common conscience of the community and the embodiment of community standards. You are the exclusive judges of what the contemporary community standard of the intended and probable recipient group is, and in determining the contemporary community standard of said group you may consider the divergent ages, the educated and uneducated, the religious and the irreligious men and women, and, of course, any other characteristics which go to make up the 'average person: of the intended and probable recipient group.'

We are convinced that such instructions clearly satisfy the standard we adopted in *State v. International Amusements*, supra.

In the first trial, the court proposed to instruct the jury in accordance with the statutory definition of contemporary community standards, however, the defendants objected thereto on the ground that such was not sufficiently specific. As a consequence, and since the defendants presented no proposed "proper" request as would correct any deficiency in the instructions, the court did not specifically define "community" for the jury.

Generally, for a party to take advantage of the trial court's failure to give full and correct instructions, he must first propose correct instructions, and should the court fail to give them, to then except thereto.[7] The obvious exception to this general rule is when the instructions given are so obviously prejudicial amounting to a denial of due process.[8] Such is not the case here, nor is it claimed to be so.

Due to the defendants' failure to make a written request for the instructions they deemed proper, they are not in a position to

---

3. *State v. McNicol*, Utah, 554 P.2d 203 (1976).

4. U.C.A., 1953, 76–10–1201(12).

5. Utah, 565 P.2d 1112 (1977).

6. U.C.A., 1953, 78–46–4.

7. Rule 51, U.R.C.P.; *State v. Erickson*, Utah, 568 P.2d 750 (1977); *State v. Kazda*, Utah, 545 P.2d 190 (1976).

8. *State v. Cobo*, 90 Utah 89, 60 P.2d 952 (1936).

complain on this appeal. In fact, from the record it appears the court may have been invited to err which activity we do not condone.[9]

■ The fourth claim of error is that the trial court abused its discretion in refusing to grant a change of venue in the second trial. The sole statutory ground for removal of a criminal action to another venue is that "a fair and impartial trial cannot be had in the county where the action is pending." [10] The procedure for a change of venue motion is detailed in U.C.A., 1953, 77–26–2, which permits the application any time before trial. In the case before us trial was scheduled for Monday, March 14, 1977, and on Thursday, March 10 defendants announced themselves ready. On Friday, March 11, the application for change of venue was made. The court denied the motion on the basis of timeliness. Although under the statute, application is permitted any time before trial, the court can properly refuse to grant it in the interest of efficient litigation, if he can see no apparent reason for the change of venue (other than delay) and that it is likely that a jury can be selected without great difficulty. The evidence defendants allege would have been presented in support of the motion was known to defendants long before the application was made. By delaying the application until just before trial, defendants must now be bound by the court's discretionary [11] ruling. The trial court must have considerable latitude of discretion in the expeditious conduct of its business,[12] and no showing is made as to any abuse of that discretion.

■ The fifth and final point on appeal is that defendants' Sixth Amendment right to a fair trial was violated by the exclusion from the jury of individuals between the ages of eighteen and twenty-one. The states have considerable discretion in qualifying jurors to serve. The United States Supreme Court recently held as follows:

The states remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community.[13]

Furthermore, the Court said in that case that for reasonable community representation to be frustrated, there must be a systematic exclusion of distinctive, cognizable groups.

U.C.A., 1953, 78–46–8(1) makes only those over twenty-one years of age eligible for jury duty. However, U.C.A., 1953, 78–46–17 provides that jurors shall be drawn from voter registration lists which now include those over eighteen years of age. The question before us is therefore whether or not persons between the ages of eighteen and twenty-one constitute a cognizable class.

The Tenth Circuit Court of Appeals has applied the following test in deciding what constitutes a cognizable class:

To establish cognizability, it is necessary to prove the following:

(1) the presence of some quality or attribute which 'defines and limits' the group; (2) a cohesiveness of 'attitudes or ideas or experience' which distinguishes the group from the general social milieu; and (3) a 'community of interest' which may not be represented by other segments of society.[14]

A distinct, cognizable group must possess unique qualities, ideas, attributes, and the like that cannot be represented by other segments of society. The Eighth Circuit Court of Appeals has addressed the ques-

9. *State v. Gleason*, 17 Utah 2d 150, 405 P.2d 793 (1965); *State v. Miller*, 111 Utah 255, 177 P.2d 727 (1947).

10. U.C.A., 1953, 77–26–1.

11. *State v. Be Bee*, 110 Utah 484, 175 P.2d 478 (1946).

12. *Thorley v. Thorley*, Utah, 579 P.2d 927 (decided May 8, 1978).

13. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

14. *United States v. Test*, 550 F.2d 577 (10th Cir. 1976).

tion now before this Court in the following manner:

. . . [t]he dispositive question is whether persons aged eighteen to twenty compose an 'identifiable group' which cannot be systematically excluded from jury service without rendering juries non-representative of community attitudes. But appellant has 'failed to show that the attitudes of this group [18–20] are inadequately represented by those several years older than they, that is, that eighteen to twenty-one year olds are a distinct, cognizable group.' (Case cited.) 'The difference in viewpoint between ages [eighteen to twenty and twenty-one to twenty-five, for example,] . . . would not seem to us of any great significance. . . . We regard it as highly speculative whether the decisional outlook of such excluded persons would be different than that of persons a mere few years older. . . .' (Case cited.) Accordingly, we hold that persons aged eighteen to twenty are not an identifiable group the exclusion of which renders a jury list nonrepresentative of the community and violative of the Fifth and Sixth Amendments.[15]

 We are inclined to adopt that holding in the case now before us. The lower courts' judgments are hereby affirmed.

ELLETT, C. J., and CROCKETT, J., concur.

WILKINS, Justice (concurring and dissenting).

I concur on points 2, 4, and 5 specified in the majority opinion; concur on point 1 for reasons pertaining to the constitutionality of the statute stated by Mr. Justice Maughan in his concurring opinion in *State v. Haig, et al.*, Utah, 578 P.2d 837, 840–847 (1978); and dissent on point 3 for reasons expressed in my dissenting opinion in *State v. International Amusements*, Utah, 565 P.2d 1112, 1116 (1977).

MAUGHAN, J., concurs in the views expressed in the concurring and dissenting opinion of WILKINS, J.

---

15. *United States v. Olson*, 473 F.2d 686 (8th Cir. 1973).