STATE of Utah, Plaintiff and
Respondent,

v.

James M. GRAY, Defendant
and Appellant.

No. 15550.

Supreme Court of Utah.

Oct. 2, 1979.

Martin Verhoef, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, Whitney D. Hammond, Uintah County Atty., Vernal, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant James M. Gray appeals from a jury conviction of burglary, a felony of the second degree.[1] He contends: first, that he did not have representation by competent and effective counsel; and second, that the failure to report closing arguments violated his right to have a meaningful appellate review.[2]

The charge was against the defendant and one James Richard Butters: that on the evening of September 18, 1977, they burglarized a certain trailer home in Vernal. At trial, the evidence connected the defendant with various items which were identified as stolen from that trailer home: a Mr. Deppe testified that he had purchased a vacuum cleaner, a skill saw and an electric drill from Mr. Butters and the defendant; and certain items of clothing and a sleeping bag were found in the defendant's motel room.

In support of his contention that his counsel at trial was incompetent and ineffective, the defendant excerpts certain portions of the record. In his opening statement, the attorney told the jury that he had been appointed counsel for the defendant; that there will be no evidence that the defendant Gray ever entered the premises supposed to have been burglarized. He also stated that there would be testimony from co-defendant Butters that the defendant Gray did not in fact commit the burglary. But he said the evidence would show that defendant Gray might have in some manner dealt with or handled some of the items stolen in the burglary. Defendant also complains that at the close of the state's evidence, his counsel made a motion to the court to dismiss in support of which he stated that the defendant was not charged with having possession of recently stolen property and that "There might have been other crimes, but he is not charged with having possession of property that is recently stolen. I mean he is charged with breaking and entering," of which he said there is no evidence of the defendant's participation.

From the foregoing, defendant argues that his counsel must have been unaware of or disregarded our aiding and abetting statute, Sec. 76–2–202, U.C.A.1953, which states:

> Every person, acting with the mental state required for the commission of an offense . . . who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

From this defendant argues that his counsel's conceding that he had something to do with the stolen property would necessarily be taken as a concession as to his guilt.[3] Defendant couples with the foregoing other occurrences, which to spare extenuation thereon, may be characterized as criticism for failing to make proper objections to evidence and motions to strike certain answers as non-responsive to the questions put.

■ Under our ideals of individual liberty, one who is suspected or accused of crime is accorded numerous and ample protections.[4] We regard them as a precious heritage which arose out of bitter experiences; and it is our ardent desire that they be scrupulously safeguarded. Yet this should be done in harmony with their purpose, which is to guard against oppressions, cruelties or harassments, or the conviction of the innocent. But they should not be so distorted or misused as to tend to defeat what should be the objective of all legal proceedings, the seeking of truth and the doing of justice.

1. Pursuant to Sec. 76–6–202, U.C.A.1953.

2. Article I, Sec. 12, Utah Constitution.

3. *State v. Pierren*, Utah, 583 P.2d 69 (1978); *State v. McNicol*, Utah, 554 P.2d 203 (1976) and cases cited therein.

4. See Art. I, Sec. 12, Utah Constitution; Amends. IV, V, and VI, U.S. Constitution.

■ The foregoing applies in full measure to the important right to counsel. This means the right to have competent counsel who will take such actions and present whatever defenses and interpose whatever objections he can in honesty and good conscience justify in the interest of his client.[5] But he is not obliged to resort to any and every means, however desperate or devious, in efforts to conceal or refute evidence of his client's guilt.

It seems anomalous, but not necessarily surprising, that one charged with crime should be so willing to accept the assistance of counsel up to the time the jury returns its verdict; then if he is convicted, be so willing to turn upon his counsel and accuse him of all manner of impropriety and the imputation of bad faith and incompetence. In the situation here: it strikes us as incongruous and unjust that defense counsel is censured and declared incompetent for simply recognizing and candidly asserting what he undoubtedly knew to be inevitable: that evidence would be forthcoming as to the defendant's connection with the stolen goods; and that perhaps as a matter of trial strategy, in order to lessen the impact thereof, he chose to disclose that fact to the jury himself and argue the defendant's innocent participation, as distinguished from any actual complicity in the burglary. The fact is that even if the defendant had had something to do with the stolen property, but without any guilty knowledge, or even if he had been guilty of receiving stolen property, he could not properly have been convicted on the charge of burglary, just as his counsel stated.

■ Notwithstanding the protestations of the defendant (adopted by the dissent), we think a reading of the total record supports the conclusion that the defendant was given a competent defense by a lawyer who shared his interest and endeavor to obtain an acquittal on the offense charged.

■ There is the further proposition to be considered: that even if his counsel did not perform as skillfully as the now-convicted defendant might have desired, his guilt was so clearly evident that even if there was any misjudgment of counsel we do not believe there is any reasonable likelihood that there would have been a different result, wherefore, there should be no reversal of the conviction.[6] The defendant has not established anything more than mere speculation as to prejudice because of ineffectiveness of his counsel.[7]

■ As to defendant's second point: that the failure to report closing arguments deprived him of his constitutional right to appeal, we make these observations: The general rule is that the court reporter, and the extent to which he records court proceedings, is under the control of and subject to the discretion of the court.[8] For the reason that the arguments of counsel are often extended, and proceed with considerable rapidity, it is not customary in our Courts, nor in most courts, for the reporter to take down the arguments of counsel, unless and to the extent directed by the

---

5. We do not mean to be understood as saying that a defendant can only succeed in showing that he was deprived of counsel by showing that his attorney's failures reduced his trial to "a farce or a mockery of justice." We agree with the dissent that the standard should be as stated in *State v. McNicol*, cited in footnote 1 of the dissent, that the right to counsel "is *not* satisfied by a sham or pretense" of an attorney, but an accused is "entitled to the assistance of a competent member of the Bar, who shows a willingness to identify himself with the interests of the accused and present such defenses as are available."

6. See Sec. 77–42–1, U.C.A.1953. In the early case of *State v. Thorne*, 41 Utah 414, 126 P. 286 (1912), this Court stated that even though an argument of counsel (the prosecutor) was improper, it would not be deemed error to justify reversal where the guilt of the accused was evident. Cf. also *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), cited in *State v. Scandrett*, 24 Utah 2d 202, 468 P.2d 639 (1970).

7. *State v. McNicol*, footnote 3 above.

8. *McCoy v. State*, 108 Tex.Cr.R. 583, 2 S.W.2d 242 (1927).

trial judge.[9] This is recognized and made allowance for in our statute Sec. 78–56–2, U.C.A.1953:

[I]t shall be the duty of the shorthand reporter to attend all sessions of the court, and to take full stenographic notes of the *evidence given* and of all proceedings had therein *except when the judge dispenses with his services in a particular cause or with respect to a portion of the proceedings thereof.* . . . [Emphasis added.]

■ This deprives no one of any essential right. The trial judge, the defendant, and counsel for both sides are all required to be present. They are presumably paying close attention to what is said in the arguments; and each has unfettered opportunity to interrupt at any time and request that any portion of an argument be recorded, and to voice any objection thereto he may desire. For this reason, a mere shot-gun charge that there was prejudicial error in not so recording the closing arguments is without substance.

It is our opinion that the defendant has been accorded his entitlement to a full and fair opportunity to have his guilt or innocence determined by a jury, and passed upon by a fair and competent judge, consequent to which we are not persuaded that there was any error or irregularity which would warrant a reversal of his conviction.

Affirmed. No costs awarded.

MAUGHAN and HALL, JJ., concur.

WILKINS, Justice (dissenting):

I respectfully dissent.

In my opinion, the case should be remanded for a new trial. On its face, the record discloses that at trial defense counsel was unaware of a very fundamental matter in this case—the aiding and abetting statute on which an instruction was given. His comments both in opening statements to the jury as well as to the District Judge later in the proceedings manifest an apparent belief on his part that because the defendant did not "break and enter" the burglarized premises or did not enter at all, he enjoyed a valid defense to the crime of burglary, notwithstanding the aiding and abetting statute and instruction. Such a misconception constitutes prejudicial error, in my opinion, because counsel geared the trying of this matter to that erroneous belief. I fail to see under any reasonable view of the record that this misconception can be deemed to constitute trial strategy by defendant's trial counsel.

Also, though the issue was not raised, nor is it critical to my dissent, I believe we should, when appropriate, consider clearly abandoning the standard heretofore adopted, at times, by this Court, ineffective assistance claims, which requires that a defendant in a criminal case can succeed only if his attorney's lack of diligence or competence reduced his trial to a "farce or sham," [1] or, its legal synonym, used by other courts, a "mockery of justice".[2]

According to Chief Judge Bazelon of the U.S. Court of Appeals for the D.C. Circuit, this standard "requires such a minimal level of performance from counsel that it is itself a mockery of the Sixth Amendment." Bazelon, *The Defective Assistance of Counsel,* 42 U.Cin.L.Rev. 1, 28 (1973).[3] This standard equally offends, I submit, Art. 1, Sec. 12, Constitution of Utah.

STEWART, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.

---

9. See *Lane v. State,* 46 Ala.App. 637, 247 So.2d 679 (1971).

1. See, e. g., *State v. Pierren,* Utah, 583 P.2d 69 (1978), *State v. McNicol,* Utah, 554 P.2d 203 (1978) (and cases cited therein). I acknowledge this Court in the past, on occasion, has adopted language of "competence of counsel" as well as "farce or sham".

2. See, e. g., *Bell v. Alabama,* 367 F.2d 243 (5th Cir. 1966); *Williams v. Beto,* 354 F.2d 698 (5th Cir. 1965); *People v. Washington,* 41 Ill.2d 16, 241 N.E.2d 425 (1968).

3. Also see Finer, *Ineffective Assistance of Counsel,* 58 Cornell L.Rev. 1077 (1973) and *People v. Pope,* 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859 (1979), where the California Supreme Court recently adopted the reasonable competence of counsel standard.