**STATE of Utah, Plaintiff and Respondent,**

v.

**James PIEPENBURG, Defendant and Appellant.**

No. 15895.

Supreme Court of Utah.

Oct. 26, 1979.

---

John D. O'Connell, Richard J. Hertzberg, Phoenix, Ariz., for defendant and appellant.

Robert B. Hansen, Atty. Gen., Paul E. Reimann, Asst. Atty. Gen., Roger Cutler, Salt Lake City Atty., Paul G. Maughan, Stanley H. Olsen, Asst. City Attys., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals from his conviction of violating Utah's obscenity statute.[1] He was sentenced to six months in jail with three months suspended and the sentence was stayed pending this appeal.

On May 25, 1977, three films were seized from the Gallery Theatre pursuant to a search warrant and defendant was arrested. The warrant was issued by a magistrate who based his order on the detailed description of the films as contained in a police officer's affidavit. Although defendant claims he had previously terminated his relationship with the theatre, he was at the theatre when the films were seized.

A preliminary hearing was held on June 21, 1977, before a magistrate. Based on the testimony of a police officer as to the contents of the film, defendant was bound over for trial. Subsequently, on November 15, 1977, the district court remanded the case for a second preliminary hearing with the instruction that the magistrate was to view the films. The second preliminary hearing was held February 1, 1978, at which time the magistrate viewed the films and found them to be obscene. The case then was tried in district court in May 1978 before a jury which found defendant guilty of having violated Utah's obscenity statute.

Defendant asserts five basic points on appeal: (1) the unconstitutionality of the statute; (2) insufficiency of the evidence to find defendant guilty; (3) unconstitutional

1. U.C.A., 1953, 76-10-1204.

restraint of freedom for failure to promptly obtain a judicial determination as to the obscene nature of the films; (4) denial of a trial by a fair and impartial jury; and (5) prejudicial statements by the court before the jury.

▮ Defendant's challenge to the constitutionality of the statute concerns U.C.A., 1953, 76–10–1208(1) which provides as follows:

It is an affirmative defense to prosecution under this part that the distribution of pornographic material was restricted to institutions or persons having scientific, educational, governmental, or other similar justification for possessing pornographic material.

The claim that the statute is vague focuses upon the phrase "other similar justification." Defendant asserts that the meaning of the phrase cannot be ascertained with precision. In *State v. Haig*,[2] we held that the general statute is not unconstitutionally vague:

A statute is vague when it fails to inform persons of ordinary intelligence what their conduct must be in order for them to be guilty of a violation thereof. [Citation omitted.]

\*     \*     \*     \*     \*     \*

Our statute clearly states that the article must appeal to prurient interests in sex (U.C.A., 1953, as amended 76–10–1203(1)(a)); it specifically defines the prohibited conduct and sets it out in U.C.A., 1953, as amended, 76–10–1201(7) and 76–10–1203(1)(b); and states that in order for the matter to be pornographic, it must have "no serious literary, artistic, political or scientific value" (U.C.A., 1953, 76–10–1203(2)).

Our statute thus complies fully with the requirements set out by the high Court. It does not offend against any constitutional provision. It is a valid statute and those who so flagrantly flout it must pay the penalty for doing so.

Likewise, the affirmative defense statute cited ante is sufficiently clear that men of common intelligence need not guess at its meaning.[3] Only persons or institutions that can demonstrate a bona fide "scientific, educational, governmental or other similar justification" for possessing such material are exempt from the sanction of the statute. It cannot be logically argued that these words are vague when such words as "literary," "artistic," and "political" all pass constitutional muster.[4] The word "similar" is limited to and modified by the three specific terms immediately preceding it, (scientific, educational and governmental) and should not be significantly expanded beyond these three basic legitimate reasons for possessing pornographic material. Nevertheless, it is conceivable that a defendant might show a justifiable reason for possessing such material which cannot be clearly classified as falling within these three categories. As the court noted in *People v. Illardo*:[5]

.   .   . In using the term, "other similar justification," the legislature does not lead a defendant down a blind alley where he cannot see or determine whether he has a right to propound an affirmative defense. Rather, by legislative indulgence, it opens another area in which a defendant in a particular case well might assert that the person or institution to whom he had disseminated obscene material was one whose possession of the material would be as legitimate and as socially desirable as those listed under the three enumerated categories.

▮ Defendant's claim that it is in violation of his right to equal protection of the

---

2. Utah, 578 P.2d 837 (1978); reaffirmed in *State v. Pierren*, Utah, 583 P.2d 69 (1978) and *State v. Eagle Book*, Utah, 583 P.2d 73 (1978).

3. *People v. Illardo*, 97 Misc.2d 294, 411 N.Y. S.2d 142 (1978).

4. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

5. Supra, footnote 3.

laws also fails. In *State v. Packard*,[6] we held as follows:

> Statutes may deal with different classes differently, if all within the same class are treated uniformly, and so long as there is some reasonable basis for differentiation between classes related to the purpose of the statute.

There is clearly a reasonable basis for treating law enforcement or educational institutions with bona fide pursuits and intentions differently than profit-making commercial ventures with unlawful pursuits and intentions.[7] Therefore, as we have previously held, the statute is constitutional.

■ Defendant next claims that there was insufficient evidence for the jury to find that he exhibited the films, instructed, requested or commanded anyone else to exhibit them or had any knowledge of what was in them. He concedes that he was a director and former manager, but contends that he had terminated his employment at the theatre in mid-May. A jury verdict is to be sustained where there is substantial evidence to support it.[8]

The evidence introduced at trial demonstrated the following: At the time of the offense defendant was shown to be the president and a director of the corporation which operated the theatre (West Gallery Corporation); defendant applied for the business and regulatory licenses for the operation of the theatre for the year 1977 and there had been no change made thereon at the time of the offense; defendant was the manager of the theatre during February, March, April, and at least part of May; he was a paid employee of West Gallery Corpo-

ration through June 1977; he was present on the premises when the films were seized, and had been present on many prior occasions; he had authority to act for the corporation and the theatre as seen by his actions at the time of arrest;[9] the theatre restricted entrance to the premises by a "locking buzzer device" on its door; the premises were posted with the notices describing the sexual nature of the materials shown and patrons were required to sign a statement that they understood the nature of the material to be viewed.

Based on the totality of the foregoing evidence, a jury could reasonably conclude that defendant had knowledge of the content of the films seized and that he was guilty of the crime charged.

The contention regarding restraint of freedom is really two-fold. Defendant claims that the trial court cannot issue a valid search warrant without personally viewing the allegedly pornographic films, and further, that once seizure has occurred, there must be a prompt adversary proceeding as to the pornographic nature of the material.

■ As to the first proposition, our statute[10] provides that the material alleged to be pornographic should be attached to the affidavit where practical. However, where the magistrate deems it not practical to "attach the material to the affidavit," he may properly issue the warrant based solely on the affidavit filed with him. The case[11] relied upon by defendant to challenge the constitutionality of such procedure appears to have been expressly overruled in *State v. Conaughty*,[12] which held as follows:

6. 122 Utah 369, 250 P.2d 561 (1952); See also *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

7. See my concurring opinion in *Salt Lake City v. Piepenburg*, Utah, 571 P.2d 1299, 1302 (1977).

8. *State v. Romero*, Utah, 554 P.2d 216 (1976); see also *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

9. He personally accompanied police officers through the theatre, discussed the search warrant with them and voluntarily removed the films from the projector and handed them to the police officers.

10. U.C.A., 1953, 76-10-1212.

11. *Hess v. State*, Okl.Cr., 536 P.2d 366 (1975).

12. Okl.Cr., 561 P.2d 554 (1977); See also *Robinson v. City of Birmingham*, Ala.Cr.App., 353 So.2d 528 (1977) and *United States v. Pryba*, 163 U.S.App.D.C. 389, 502 F.2d 391 (D.C. Cir. 1974).

A magistrate may find probable cause to issue a warrant when an affiant views a film and in his affidavit or attendant testimony he factually describes the film in detail. [Citations omitted] The affidavit must simply allow the magistrate an opportunity to "focus, searchingly on the question of obscenity," [citations omitted].

We adopt such holding here, and based on the content of the police officer's affidavit and accompanying memorandum, we are convinced that the magistrate searchingly focused on the issue of obscenity before ever issuing the search warrant.

■ There is no merit to defendant's contention on appeal that he was refused a prompt adversary hearing. This is a hearing made available to defendant in addition to the preliminary hearing and trial whereby the defendant can challenge the basis of the complaint against him; i. e., the obscene nature of the materials seized. However, *a defendant must request such a hearing* according to the following procedure:

In the event that a search warrant is issued and material alleged to be pornographic is seized under the provisions of this section, any person claiming to be in possession of this material or claiming ownership of it at the time of its seizure may file a notice in writing with the magistrate within 10 days after the date of the seizure, alleging that the material is not pornographic. The magistrate shall set a hearing within seven days after the filing of this notice, or at such other time as the claimant might agree. At this hearing evidence may be presented as to whether there is probable cause to believe the material seized is pornographic, and at the conclusion of the hearing the magistrate shall make a fur-

ther determination of whether probable cause exists to believe that the material is pornographic. A decision as to whether there is probable cause to believe the seized material is pornographic shall be rendered by the court within two days after the conclusion of the hearing.[13]

Although defense counsel did request that the court view the films at the preliminary hearing,[14] at no time did defendant avail himself of the protections of the statute. In *Heller v. New York*,[15] the United States Supreme court ruled that all that is constitutionally required in such a case is that an adversary proceeding is available at the request of an interested party. This holding was recently applied to facts comparable to those now before us in *United States v. Echols*,[16] wherein it was stated:

. . . The appellant, however, at no time filed a motion to have a judicial determination of the obscenity question prior to trial, nor did he ask the court to allow him to copy the seized films. Thus, this case is much like the situation in *Heller* which prompted the Supreme Court to explain:

"[T]he barrier to a prompt judicial determination of the obscenity issue in an adversary proceedings was not the State, but petitioner's decision to waive pretrial motions and reserve the obscenity issue for trial." 413 U.S. at 490–491, 93 S.Ct. at 2794.

A prompt determination of the obscenity issue prior to trial was available to the appellant. The appellant waived his right to such a determination by failing to request it via standard motion practice.

■ Defendant claims he was denied a trial by a fair and impartial jury due to the court's refusal to permit defense counsel to challenge certain jurors for cause out of the

---

**13.** U.C.A., 1953, 76–10–1212(3).

**14.** At the time the films were seized and defendant arrested, a preliminary hearing for a Class A misdemeanor was a matter of right, not request. The fact that a second preliminary hearing was held wherein the magistrate did view the films and rule upon the issue of obscenity is not indicative that an error had been made; rather, that subsequent prelimi-

nary hearing was ordered when defendant had failed to properly challenged the issue of obscenity.

**15.** 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

**16.** 577 F.2d 308 (5th Cir. 1978).

presence of the prospective jury. Basically this claim is that on voir dire several of the jurors stated that they were members of the Church of Jesus Christ of Latterday Saints (hereinafter LDS) and ·that their church had taken a stand against pornography. Defendant claims that the response of two of the jurors [17] to a question as to whether the position of the church would affect their ability to be fair was unsatisfactory. On appeal defendant contends that to require him to challenge these jurors in the presence of the jury would antagonize not only the two who were to be challenged but all other members of the LDS church on the panel.

It is to be noted that defendant chose not to challenge individual jurors during the jury selection process.[18] This being so, the trial court was never given the opportunity of ruling upon the alleged bias. Defendant is bound by his tactical decision [19] to not challenge members of the jury for cause. Nevertheless, the record itself fails to support defendant's claim of bias. The claim is that when the two jurors were asked whether activities of the LDS church relating to pornography would affect their ability to return a fair and just verdict, they responded "I don't think so." [20] At other times in the voir dire, the jurors responded that they had no predisposition as to defendant's guilt or innocence and that they would decide the issue of obscenity "very fairly" based upon what the court told them the law to be. The judge made extensive inquiry of the jurors to insure that they met the requirement of "absolute fairness and impartiality," by questioning and cautioning them as a group as well as individuals. Notwithstanding a juror's declaration of impartiality, an accused has the opportunity to show actual juror prejudice.[21] Defendant failed to present any evidence, make any showing, or demonstrate in any manner whatsoever that his constitutional rights were prejudiced at trial.

■ The final point on appeal concerns the court's interruption of defense counsel during closing argument. The following interchange gives rise to defendant's contention:

MR. HERTZBURG: [Addressing the jury] Now, as I told you—and this is very important—they have got to prove community standards two places, or they haven't made their case. And I suggest to you nobody was qualified, not one scintilla of evidence came from that stand on community standards that supports their case. Not one person even gave an opinion that it violated community standards. The burden of proof is on them and they want you to guess. They want you to supply the evidence because they said well, you can draw on your own knowledge. Of course you can draw on your own knowledge. What that means is you don't have to check your common sense at the door. If the community standards are—somebody says the community standards are that people have intercourse in the street, your common sense tells you, no. But, nowhere does it say you have got to supply the proof.

THE COURT: Now, sir, sir, by statute the State is not required to put any proof of that on. I can't sit here. The statute says the State is not required and neither is the Defense required to put on evidence to the community standards. It is for the jury alone.

MR. HERTZBERG: I understand that.

---

**17.** One of these was challenged peremptorily by the defense and did not even serve as a member of the jury.

**18.** Provided for by U.C.A., 1953, 77–30–13. See also U.C.A., 1953, 77–30–21 requiring that the grounds for challenge be stated for the record.

**19.** That counsel has substantial latitude in selecting trial strategy see *State v. Pierren*, Utah, 583 P.2d 69 (1978).

**20.** The phrase "I think I could be fair" has been held not to be an equivocal response. *Tidmore v. City of Birmingham*, Ala.Cr.App., 356 So.2d 231 (1977).

**21.** *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

THE COURT: Alright, sir. Now, let's not misstate to the jury any more.

MR. HERTZBERG: Well, I didn't mean to misstate. I suggest to you there is no evidence before you from which you can determine community standards. That is my position.

Defendant claims that the court's comments misstated the law so as to mislead the jury; that to not permit the defense to argue that the state has failed to prove an element of the offense is to effectively direct a verdict in favor of the state; and that the court's comments portrayed defense counsel as one who was underhanded in purposely misleading the jury, thereby denying defendant his right to effective counsel.

These claims too must fail in light of our statute [22] which specifically provides support to the trial court's comments:

> Neither the prosecution nor the defense shall be required to introduce expert witness testimony as to whether the material or performance is or is not harmful to adults or minors or is or is not pornographic, or as to any element of the definition of pornographic, including contemporary community standards.

We have previously held that the jurors themselves are to determine the community standards.[23] To have allowed defense counsel's arguments to go unchallenged, the jurors would have been led to believe that the state had failed to prove one of the elements of the crime. The court judiciously corrected any confusion which may have arisen.

The conviction is affirmed.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

MAUGHAN, J., concurs in result.

22. U.C.A., 1953, 76–10–1203(3). After the closing arguments, the court read the statute to the jury verbatim.

23. *State v. Pierren*, Utah, 583 P.2d 69 (1978); See also *Smith v. United States*, 431 U.S. 291,

97 S.Ct. 1756, 52 L.Ed.2d 324 (1977) and *Hamling v. United States*, supra footnote 8, for the proposition that jurors are to draw on their own knowledge of the views of the average person in the community in obscenity cases.